FRANK W. STEARNS & another, trustees, *vs.* INHABITANTS OF
BROOKLINE.

Norfolk.    November 10, 1914. — November 23, 1914.

Present: RUGG, C. J., HAMMOND, BRALEY, DE COURCY, & CROSBY, JJ.

*Tax.  Partnership.*

The senior member of a business partnership, which bore his name and whose
other members were his sons, made during his lifetime an agreement with the
other members that he would make arrangements "so that his estate, after
his death, should take the same place in the firm which he had had while living,
and under the same terms and conditions." By his will he provided that the trus-
tees under his will should leave with the firm all money or other property which
he might have contributed as capital or lent to the firm, so long as his three
sons or any of them should continue to carry on the business conducted by the
firm at the time of his death, and so long as his sons or a majority of them,
who might be partners in the firm, should desire such moneys or other property
to remain in the firm.  He further provided that, "said moneys and other prop-
erty are to be considered as a loan by my said trustees to said firm at the risk
of the business (meaning thereby that all just debts of said firm are to be paid
before said trustees can claim contribution from its assets) and are to bear
as interest a sum equal to eight per cent upon the capital so left and invested
by said trustees."  The testator's sons survived him and remained partners
in the firm, and no capital contributed by the testator was withdrawn.  The
assessors of a town assessed the property, which was allowed by the trustees
to remain in the hands of the firm under this provision of the testator's will, as
a debt due to the trustees for money lent to the firm which was taxable under
St. 1909, c. 490, Part I, § 23, cl. 5; § 4, cl. 2.  *Held,* that this property was
not a debt or money at interest owed by the firm to the trustees, and that
accordingly it was taxable only as partnership property at the place of busi-
ness of the partnership under St. 1909, c. 490, Part I, § 27, the partnership
between the trustees and the surviving members of the firm being in legal
effect a new partnership whose assets were derived in part from the testator's
estate.

PETITION, under St. 1909, c. 490, Part I, § 77, by the trustees
under the will of Richard H. Stearns, late of Hull in the county
of Plymouth, appealing from the refusals of the assessors of the
town of Brookline to abate a portion of the taxes assessed to the
petitioners as such trustees for the years 1911 and 1912.

In the Superior Court the case was submitted to *King,* J.,
upon an agreed statement of facts, which included the following
facts and also those that are stated in the opinion:  In 1911 and

1912 the petitioners filed with the assessors of the respondent within the time required by law statements of the property for which they believed themselves to be taxable as such trustees in Brookline.

These statements did not include the interest of the trustees in the firm of R. H. Stearns and Company, as the trustees asserted that they were not taxable in Brookline upon such interest. The assessors of Brookline assessed to the trustees on personal property as of April 1, 1911, a tax of $457.50, of which the sum of $440.73 was assessed upon the interest of the trustees in the firm of R. H. Stearns and Company. The trustees paid the tax under protest, and presented to the assessors a petition for an abatement of the portion of the tax which was assessed upon their interest in the firm of R. H. Stearns and Company. On May 22, 1913, the trustees received written notice from the assessors of their decision dismissing the petition and refusing the abatement prayed for. The assessors of Brookline assessed the trustees on personal property as of April 1, 1912, a tax of $459.43, of which the sum of $442.39 was assessed upon the interest of the trustees in the firm of R. H. Stearns and Company. The trustees paid the tax under protest, and presented to the assessors their petition for an abatement of the portion of the tax which was assessed upon their interest in the firm of R. H. Stearns and Company. On May 22, 1913, the trustees received written notice from the assessors of their decision dismissing the petition and refusing the abatement prayed for.

The judge found the facts to be as set forth in the agreed statement of facts, and reported the case for determination by this court upon the pleadings and the agreed facts. If the decision of the assessors was sustained, judgment was to be entered for the respondent; if not, judgment was to be entered for the petitioners in the sum of $440.73, with interest from November 1, 1911, and in the sum of $442.39, with interest from March 5, 1913.

*W. H. White,* for the respondent.

*A. H. Wellman,* (*J. H. Powers* with him,) for the petitioners.

BRALEY, J. The parol agreement between the testator and the other members of the firm of R. H. Stearns and Company that

in the event of his death the firm should continue and he would make arrangements " so that his estate, after his death, should take the same place in the firm which he had had while living, and under the same terms and conditions," formed part of the articles of copartnership. *Buffum* v. *Buffum,* 49 Maine, 108, 109. If this contract had been broken by the refusal of his personal representatives to enter the firm in his place, the estate could have been subjected to a suit for damages. *Burwell* v. *Cawood,* 2 How. 560. *Reeve* v. *Lisle,* [1902] A. C. 461. The surviving members of the firm therefore upon his death had the right to continue the business instead of going into liquidation and accounting to the estate for his share. *Stanwood* v. *Owen,* 14 Gray, 195, 199. *Williams* v. *Brookline,* 194 Mass. 44. *Butler* v. *American Toy Co.* 46 Conn. 136. *Shaw, appellant,* 81 Maine, 207. *Stewart* v. *Robinson,* 115 N. Y. 328. But in the absence of testamentary provisions creating such liability the estate would not be responsible for firm debts thereafter contracted. *Bacon* v. *Pomeroy,* 104 Mass. 577, 585.

It appears that after the agreement had been made the testator informed his partners that arrangements had been made to effectuate the agreement, and by the fifth article of his will he provided as follows:

"It is my will and I direct that my said trustees shall hold all the property devised and bequeathed in trust under Article Fourth of this my will in common and undivided until such time or times as it shall be found necessary to divide the same in order to carry out and fulfill the provisions in this will contained; and I further direct my said trustees to leave with the firm of R. H. Stearns and Company, in case I shall be a member of said firm at the time of my death, all money or other property which I may have contributed as capital or lent to the said firm, so long as my sons Frank W. Stearns, William F. Stearns and Richard H. Stearns, Junior, or any or either of them shall continue to carry on or be members of any firm which shall carry on the business conducted by said firm at the time of my death, and so long as my said sons or a majority of them, who may be partners in said firm shall desire such moneys, or other property to remain in said firm. Said moneys and other property are to be considered as a loan by my said trustees to said firm at the risk of the busi-

ness' (meaning thereby that all just debts of said firm are to be paid before said trustees can claim contribution from its assets) and are to bear as interest a sum equal to eight per cent upon the capital so left and invested by said trustees. And I direct my said trustees to withdraw from said firm so long as my said sons or any or either of them shall carry on or be members of any firm which shall carry on said business, no moneys or other property, except said interest so accruing on said trust fund remaining in said partnership, unless my said sons or a majority of them who may be partners in said firm, consent in writing thereto. And I further direct my said trustees if and when thereto requested in writing by my said sons or a majority of them who may be partners in the said firm, to invest as further capital in said firm at the risk of the business such portions of any funds then held in trust by said trustees, as my said sons or a majority of them who may be partners in said firm may in writing request, and I direct that all moneys or property so left or invested by my said trustees in said business shall be considered to have been properly invested by them, and they shall incur no personal liability by reason thereof, but it is my wish that all money and other property held by them in trust under this will shall be liable for the just debts of said business so carried on by my said sons or either of them so long as any of said trust property shall remain in said firm's business."

The testator's sons not only survived him but remained members of the firm and with their associates have since carried on the business from which the capital contributed by the testator never has been withdrawn.

It is the respondent's contention that this property should be classed as a debt due to the trustees for money lent which it lawfully can tax. St. 1909, c. 490, Part I, § 23, cl. 5. *Williams* v. *Boston*, 208 Mass. 497. *Watson* v. *Boston*, 209 Mass. 18, 21, 22. The intention of the testator must control and, as has been said, the language used is to be read in the light of the attendant circumstances when the instrument was executed. *Dana* v. *Dana*, 185 Mass. 156. *McCurdy* v. *McCallum*, 186 Mass. 464. The testator was the senior member and the founder of the firm, to the capital of which he had very largely contributed. It bore his name. It had been developed by his efforts into a profitable

and well established business. By agreement with his associates they had been assured that his death would not cause a dissolution, and that his estate should succeed to his interest. If his share of the capital should be withdrawn a winding up must follow and the partnership might be so crippled that reorganization would be impossible. It was with those conditions in mind that the will was drafted. The word "loan" is used as descriptive of the "moneys and other property" which is to be "at the risk of the business," but he adds, "meaning thereby that all just debts of said firm are to be paid before said trustees can claim contribution from its assets." While the "moneys and other property" are to pay as interest a sum equal to eight per cent upon this portion of the capital, no part of the principal is to be withdrawn unless his sons or a majority of them consent thereto in writing. The sons are thus given the power to prevent the trustees from putting the firm's existence in peril, even if in their judgment such action may be advisable in the interest of the trust. Apparently he had in mind that this contingency might arise, for they are exonerated from all personal liability by reason of the investment. His solicitude for the welfare of the firm and the maintenance of its reputation for business integrity connected with his name is further shown when in unmistakable words the testator declares, "it is my wish that all money and other property held by them in trust under this will shall be liable for the just debts of said business so carried on by my said sons or either of them so long as any of said trust property shall remain in said firm's business." The respondent has failed to point out any sufficient reason why the testator's purpose to preserve and perpetuate the business should not be given effect. It is agreed by the parties that at his death he had no monetary interest in the firm except the amount contributed as capital, to which no further contributions have been made by the trustees. During his life his share of the profits had been substantially nine per cent on this amount, and by the will he fixed the percentage at a slightly lower rate. It is only after all firm debts, lawfully incurred in the business, have been deducted and net profits ascertained that eight per cent thereof is payable to the trustees.

The intention to continue the estate in business being mani-

fest, the testator's death did not transform his share of the capital into a debt or loan. *Robinson* v. *Simmons,* 146 Mass. 167, 175. *Packard* v. *Kingman,* 109 Mich. 497, 506. And having directed that it should remain with the firm on the same basis, the rate of interest measures the percentage of profits coming to the trustees. It is plain that such an agreement by the testator would have made him a member of the partnership. *McMurtrie* v. *Guiler,* 183 Mass. 451, 453. The will, as we have seen, provides that not only are the trustees to enter the firm to the extent of the capital already invested, but the assets of the estate in so far as they consist of funds held in trust may be charged with the payment of partnership debts contracted after the testator's death. *Wild* v. *Davenport,* 19 Vroom, 129, 137. *Willis* v. *Sharp,* 113 N. Y. 586, 590.

The trustees having exercised the authority conferred, the partnership between them and the surviving members is in legal effect a new partnership, whose assets in part are derived from the testator's estate. *Andrews* v. *Stinson,* 254 Ill. 111; Ann. Cas. 1913, B. 927. *Mattison* v. *Farnham,* 44 Minn. 95. *Kennedy* v. *Porter,* 109 N. Y. 526. *Wilcox* v. *Derickson,* 168 Penn. St. 331. *Pemberton* v. *Oakes,* 4 Russ. 154. It follows that the trust property thus invested, not being a debt or money at interest owed by the firm to the trustees, (St. 1909, c. 490, Part I, § 4, cl. 2,) is taxable only as partnership property at the place of business of the partnership. St. 1909, c. 490, Part I, § 27. *Williams* v. *Boston,* 208 Mass. 497.

The petitioners, having complied with the requirements of the St. of 1909, c. 490, Part I, §§ 41, 72, 73, 77, are accordingly entitled to judgment for the amounts with interest as stipulated in the report.

*So ordered.*