ELMER A. LORD *vs.* WILLIAM H. PLUMER & another.

Suffolk.    November 17, 1920. — January 7, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Partnership. Contract,* Construction. *Equity Jurisdiction,* Partnership.

By unambiguous provisions of an agreement in writing, L, one of four partners engaged in the insurance business under the firm name, L and Company, specifically sold to the other three partners all of his interest in the partnership and in the "good will and the firm name therein" for the consideration of a fixed annual salary during a certain term and a stated percentage of the net profits of the business of any year in excess of $50,000, the salary to be decreased if the profits were less than that amount and to cease entirely at the option of the other three if the profits fell below $20,000, the three agreeing to indemnify L against loss, and the agreement stating that "one of the principal purposes for executing this new partnership agreement is to carry out an often expressed wish of said L to retire from active interest in the insurance business . . . and accordingly this sale of all of L's ownership in the shares, or percentages, as well as of the good will and name of the business, including furniture and fixtures is made." *Held,* that under the agreement L ceased to be a copartner with the other three.

After the execution and delivery of the contract above described and the death of one of the three, L could not maintain a bill in equity to compel a liquidation of the partnership nor to enjoin the remaining two from selling, with the assent of the executor of the will of the deceased partner, a portion of their shares in the partnership to one whom they accepted as a new partner, and from continuing the business with such new partner under the old firm name.

BILL IN EQUITY, filed in the Superior Court on June 9, 1920, and afterwards amended, by Elmer A. Lord against William H. Plumer, Willard C. Hill, and the executors of the will of Horace H. Soule, alleging that an agreement, made between the plaintiff and Plumer, Hill and Soule, which with its amendments was annexed to the bill and material portions of which are described in the opinion, made the plaintiff a partner with the others, that Soule had died

and that Plumer and Hill, with the assent of the executors of the will of Soule, refused to recognize the plaintiff's standing as a partner and were about to sell an interest in the partnership to one Harvey Mason against the wishes of the plaintiff. The prayers of the bill were that it be established that the plaintiff was a partner and that the use of the firm name or the making of partnership agreements without the plaintiff's consent be prohibited.

The defendants Plumer and Hill demurred. The plaintiff discontinued as to the executors of the will of Soule.

The demurrer was heard and was sustained by *Hammond,* J., and thereafter, by order of *Lawton,* J., a final decree was entered, dismissing the bill. The plaintiff appealed.

*R. Homans,* (*W. Gates* with him,) for the plaintiff.

*R. G. Dodge,* (*C. F. Choate, 3d,* with him,) for the defendants.

BRALEY, J. The question whether the bill states a case for equitable relief depends upon the construction of the agreement of May 28, 1912. The preamble recites, that the parties entered into the agreement "for the conduct of an insurance business . . ., and the purchase by Soule, Plumer and Hill of said Lord's interest in said business from said Lord, it being understood and agreed that this instrument takes the place of, and is substituted for, the co-partnership agreement executed by said Lord, Soule, Plumer and Hill on the fourteenth day of April, in the year one thousand, nine hundred and ten, and the aforesaid latter agreement is null and void, except so far as it controls past and vested rights of the parties." It appears that the business was to be conducted under the old firm name of "Elmer A. Lord and Company," and, after stating the respective partnership interests theretofore existing, a sale is specifically made by the plaintiff to the other parties of his interest. From the language of articles three, four, five, six, seven and sixteen it is plain that the plaintiff not only intended to sell, but sold "his ownership in the shares, or percentages of the business," and "also his good will and the firm name therein," for the consideration of a fixed annual salary until May 28, 1918, with a stated percentage of the net profits of any year in excess of "fifty thousand dollars." The salary however was to be decreased if the profits were less than that amount, and to cease entirely at the option of the defendants if the profits

fell below "twenty thousand dollars." By the subsequent agreements of October 19, 1912, and January 10, 1918, the salary, which "is to be considered as a part of the net profits of the firm and paid monthly during its continuance the same as other partnership interests," was extended for a period of six years from May 1, 1918. The fifteenth article very clearly states the relations the plaintiff under the new arrangement sustained to his associates. It is in these words, "And it is still further understood and agreed that one of the principal purposes for executing this new partnership agreement is to carry out an often expressed wish of said Lord to retire from active interest in the insurance business in which he has been engaged for many years, and accordingly this sale of all of Lord's ownership in the shares, or percentages, as well as of the good will and name of the business, including furniture and fixtures is made." The plaintiff contributed neither property nor service to the new firm, but parted with his entire interest for an agreed compensation to be paid by the new firm doing business under the old firm name, even if that compensation might be affected by the amount of net profits. And having been indemnified against loss under article seventeen, and without any interest in profits as such, the defendants contracted to pay for his share of the assets and for the continued use of his name during a term of years unless the period was sooner terminated by his death. It is settled that under such circumstances, where no ambiguity appears in the contract, the intention of the parties controls, and accordingly the status of the plaintiff is not that of a copartner as alleged in the bill. *McMurtrie* v. *Guiler*, 183 Mass. 451, 453. *Esterbrook* v. *Woods*, 192 Mass. 499. *Phipps* v. *Little*, 213 Mass. 414. *Arnold* v. *Maxwell*, 223 Mass. 47, 49. *Deutschman* v. *Dwyer*, 223 Mass. 261, 264.

It follows that the plaintiff not being entitled to share in the net profits, or on a winding up to participation in the distribution of the net assets, the question, whether, by Soule's death, the partnership as matter of law was dissolved, or whether under article fourteen the surviving partners were not obliged to go into liquidation, is immaterial. See *Stearns* v. *Brookline*, 219 Mass. 238, 242, 243. The plaintiff, having sold and transferred the property hereinbefore described under conditions of payment and of salary sufficiently referred to, cannot maintain the bill for

injunctive relief under the first prayer. The defendants, while bound by their contract, enforcement of which in accordance with its terms can be compelled, have the right as between themselves and the plaintiff to admit new members to their firm and continue the business under the same firm name.

It is further alleged that the "plaintiff's rights will be prejudiced and his interests in said partnership endangered by such acts as another partner may do purporting to act for said partnership of Elmer A. Lord and Company," and that the defendants "while holding the plaintiff out to the public and its customers as a partner in said firm, increase the responsibility of said Lord for liabilities of said firm." But the contract contains no provision that the use of his name should cease if either of the defendants or Soule died and that the good will which he had transferred and had been paid for should revest in him. The plaintiff was content, on the terms finally consummated, to sell the unrestricted use of his name which was probably a most valuable part of the assets acquired by the defendants and Soule.

The bill also states in paragraph seven that if a new member is admitted "the necessary result will be the loss to said partnership of considerable profits by giving the customers of said partnership and the public to understand that the plaintiff is not a member of said partnership." But this possible situation is not, for reasons previously stated, prohibited by the contract. The plaintiff, in being held out to the public as a member of the reorganized firm is not thereby subjected to any greater responsibility for the firm debts than he was before. For his protection and indemnification he can resort to the provisions of article seventeen, "And it is further understood and agreed that said Soule, Plumer and Hill hereby jointly and severally agree to hold harmless the said Lord from any loss whatever resulting from the operation or sale of the aforesaid business."

The plaintiff having been fully paid the sums stated in articles "three, four, five, eight and nine" some years before the bill was filed, and no case for specific performance or injunctive relief having been stated, the decree sustaining the demurrer and dismissing the bill should be affirmed with costs.

*Ordered accordingly.*