ARTHUR N. HOLCOMBE & others, trustees, vs. COMMISSIONER
OF CORPORATIONS AND TAXATION.
SAME vs. SAME.
SAME vs. SAME.

Middlesex. March 27, 1923. — May 25, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, PIERCE, & CARROLL, JJ.

*Tax*, Income, Abatement. *Partnership*.

Under the articles of a copartnership having non-transferable shares, which
contained, among others, provisions that, upon the death of a partner,
the partnership should not be dissolved and a portion of his shares might
remain in the partnership, but that the representatives of his estate should
not be partners " or have other rights or liabilities of a partner," and, while
they should have certain shares in profits, they should " not be called upon
to bear any losses beyond the loss of the shares so remaining in the firm;
and that the estate of such deceased partner shall be held harmless from any
claim or demand arising or made by any creditor of the firm against such
estate, beyond the amount of the capital or value of the shares left in said
firm as hereinabove provided; " and under the provisions of the will of a
deceased partner made with such articles of copartnership in mind and in
compliance with them, it was *held*, that income received in 1918 by trustees
under the will was taxable as " interest " under St. 1916, c. 269, § 2 (a),
and was not income nor profit from a partnership which under § 10 was
assessable only to the partnership.

Such status was not changed by an agreement made between the trustees
under the will above described and the surviving partners and relating
to the status of the trustees' investment beginning with January 1, 1920.

An additional income tax assessed, under Sts. 1916, c. 269, § 14; 1920, c.
404, upon income not disclosed by a return filed by the taxpayer, is separate
and distinct from the original tax assessed upon the basis of the return and
is not a tax on property omitted by the taxing power when the original tax
was assessed.

If a taxpayer has failed to comply with the provisions of St. 1916, c. 269, § 20,
in claiming abatements of taxes originally assessed upon incomes for the
years 1918 and 1919 by reason of improper computations based upon his
return of incomes for those years, he cannot claim such abatements under
complaints seeking abatements of additional taxes assessed in 1921 upon
incomes for those years not disclosed by the returns.

THREE COMPLAINTS, the first and second filed in the
Superior Court on June 24, and the third on December 5,
1921, by the trustees under the will of Edwin Ginn, late of
Winchester, for the abatement of income taxes.

In the Superior Court, the three cases were heard together by *Wait*, J., upon a single agreed statement of facts.

It appeared that, on March 1, 1921, the complainants were assessed under St. 1916, c. 269, § 14, an additional income tax in the sum of $1,742.73 on income alleged by the respondent to have been received by them in the year 1918 and not to have been shown by their returns filed as required by the statute. This sum, with interest and costs, they paid, and in the first complaint sought repayment.

On March 1, 1921, the complainants also were subjected to an additional assessment in the sum of $667.43 under St. 1916, c. 269, by reason of income alleged by the respondent to have been received by them in the year 1919 and not to have been shown on their return. This sum with interest and costs they paid and sought in the second complaint its repayment. The agreed facts showed that they sought an abatement of only $548.47 and $9.04 interest.

On September 1, 1921, the complainants were assessed a tax of $2,244.03 upon their income shown for the year 1920, $375.20 of which, in the third complaint, they sought repayment.

There were two main questions presented by the record:

1. The assessments sought to be abated were made upon income received from the partnership, Ginn and Company. The respondent contended that the assessments rightly were made because the income so received was " interest " under St. 1916, c. 269,.§ 2(a). The complainants contended that such income was income or profits of a partnership, and, under § 10 of the statute, should have been assessed upon the partnership.

2. It appeared by the agreed facts that the original assessments made on the incomes for the years 1918 and 1919 were, by reason of erroneous computations by the respondent, in excess of what should have been assessed upon the income disclosed by the returns for those years; and the complainants contended that, under their claim for abatement and repayment of the taxes paid by reason of the additional assessments upon alleged incomes not disclosed by the returns, they should be allowed also to claim such·

over-assessments on the incomes which were disclosed by the returns.

It was agreed that, if both contentions of the complainants were allowed, there should be refunded to them under the first complaint $1,772.49, under the second complaint $557.51, and under the third complaint $375.20; that, if only the first contention of the complainants were allowed, there should be refunded to the complainants under the first complaint $1,772.49, under the second complaint, $422.71, and under the third complaint $375.20; that, if only the second contention of the complainants was allowed, there should be refunded to the complainants under the first complaint $389.70, under the second complaint $153.12, and under the third complaint nothing; and if neither contention of the complainants was allowed, no abatement should result " except that the tax for 1918 shall be abated $55.15 upon " the first complaint " owing to certain errors in computation not dealt with in this statement."

Other material facts are described in the opinion. The trial judge reported the cases to this court for " determination upon said agreed statement of facts, judgments to be entered upon the determination of the questions involved as agreed by the parties therein."

Material statutory provisions were as follows:

St. 1916, c. 269, § 2. " Income of the following classes received by any inhabitant of this Commonwealth during the calendar year prior to the assessment of the tax shall be taxed at the rate of six per cent per annum:

" (a) Interest from bonds, notes, money at interest and all debts due the person to be taxed, except [exceptions not material to the present case] . . ."

" § 5. Income of the following classes received by any inhabitant of this Commonwealth, during the calendar year prior to the assessment of the tax, shall be taxed as follows: . . .

" (b) The excess over two thousand dollars of the income, as defined in section six, derived from professions, employments, trade or business shall be taxed at the rate of one and one half per cent per annum. . . ."

" § 9. The income received by estates held in trust by trustees, any one of whom is an inhabitant of this Commonwealth or has derived his appointment from a court of this Commonwealth, shall be subject to the taxes assessed by this act to the extent that the persons to whom the income from the trust is payable, or for whose benefit it is accumulated, are inhabitants of this Commonwealth. The tax shall be assessed to such of the trustees as are inhabitants of the Commonwealth.

" § 10. Profits or income, of the classes hereinbefore made taxable, of partnerships of which any member is an inhabitant of this Commonwealth and which have a usual place of business in this Commonwealth, shall be subject to the taxes assessed by this act. If any of the members of the partnership are not inhabitants of this Commonwealth, only so much of the income thereof as is proportionate to the aggregate interest of the partners who are inhabitants of this Commonwealth in the profits of the partnership shall be taxed. The tax shall be assessed on such a partnership by the name under which it does business, and the partners shall not be taxed with respect to the income derived by them from such a partnership."

" § 14. If the tax commissioner discovers from the verification of a return filed under this act, or otherwise, that the income of any person subject to taxation under this act, or any portion thereof, has not been assessed, he may, at any time within two years after the first day of September of the year in which such assessment should have been made, assess the same, first giving notice to the person so to be assessed of his intention, and such person shall thereupon have an opportunity within ten days after such notification to confer with the tax commissioner in person or by counsel or other representative as to the proposed assessment. After the expiration of ten days from such notification the tax commissioner shall assess the income of such person subject to taxation, or any portion thereof, which he believes has not theretofore been assessed, and he shall thereupon give notice to the person so assessed under the provisions of section fifteen of this act, and the tax shall be payable four-

teen days after the date of such notice.   The provisions of this act in respect to the abatement and collection of taxes shall apply to a tax so assessed."   St. 1920, c. 404, adds to § 14 the following sentence: " Whenever, in the course of a verification of the returns of a taxpayer under section thirty, the commissioner finds that an overpayment of the total amount of taxes due from such taxpayer has been made on any year's return subject to verification, the amount of such overpayment shall be deducted from the amount of any additional tax found to be due on any other year's return so verified, and only the net amount thus determined to be due shall be assessed additionally."

" § 19.   Any person aggrieved by the assessment of a tax under the provisions of this act may apply to the tax commissioner for an abatement thereof at any time within three months after the date of the notice of the assessment; and if, after a hearing, the tax commissioner is satisfied that the tax is excessive in amount or that the person assessed is not subject to the tax, he shall abate the tax in whole or in part accordingly; and if the tax has been paid, the treasurer and receiver general shall repay to the person assessed the amount of such abatement, with interest thereon at the rate of six per cent per annum from the time when it was paid; . . . "   St. 1920, c. 385, § 4, extends to six months the period within which application for abatement may be made.

" § 20.   Any person aggrieved by the refusal of the tax commissioner to abate in whole or in part, under the provisions of the preceding section, a tax assessed under the provisions of this act may, instead of pursuing the remedy provided in the preceding section, appeal from such refusal by filing a complaint against the tax commissioner in the Superior Court for the county in which such person resides or has his principal place of business, within thirty days after the notice by the tax commissioner of his decision in accordance with the preceding section. . . . If an abatement is granted, the amount thereof shall be repaid to the complainant by the Treasurer and Receiver General, with interest at the rate of six per cent per annum from the time

when the tax was paid, and costs. The remedies provided by sections nineteen and twenty hereof shall be exclusive, whether or not the tax is wholly illegal."

*F. T. Field,* (*G. K. Gardner* with him,) for the complainants.

*C. R. Cabot,* for the respondent.

BRALEY, J.    The petitioners who are the duly appointed and qualified trustees of the will of Edwin Ginn bring suit in the first and second cases for full abatement of additional income taxes assessed and paid under protest for the years 1918 and 1919, after an original assessment on income received in those years had been paid, and in the third case for a partial abatement of a tax assessed on income received in 1920. St. 1916, c. 269, §§ 2, 5, 9, 14, 19. St. 1920, c. 385, § 4. *Faulkner* v. *Tax Commissioner,* 229 Mass. 120.

The first question is whether the moneys received by the trustees in 1918 and 1919 on which the taxes were levied, was interest, or income derived from a partnership of which the testator at his death was a member.

The firm of Ginn and Company was formed about May 25, 1906, in which the interest of the partners was defined by non-transferable shares of the original value of $100, certificates for which were never issued. The capital was divided into fifty-two thousand, five hundred shares of which twenty-one thousand, three hundred and twenty-eight were owned by the testator, and the remainder by his twelve associates. The fifth article of the copartnership agreement as modified and amended contained a provision, that the firm should not be dissolved by the death of a partner, but upon his death his interest should be valued and the amount paid to his personal representatives with interest at five per cent a year until the date of payment, but the firm was not to be called upon to pay more than ten per cent of the principal in any succeeding year. If the decedent so provided his executors had the option to leave one third of his share of the capital " in the firm, sharing, to the extent of said shares so remaining, profits and losses in the same way that such deceased partner would share, except that no dividends in excess of seven per centum per annum shall be paid upon such shares."

The invested capital if that event occurred was to share the risks incident to the business on an equality with the shares of the surviving partners who were to indemnify the executor if losses were in excess of the amount of the capital. The executors' participation in the management of the business was limited to voting on questions where the vote was taken by shares and they were to be given accounts showing the financial condition of the firm, but an executor " shall not be a partner or have other rights or liabilities of a partner." It was further stipulated that if the firm became financially embarrassed " such personal representative and the estate of such deceased partner shall not be called upon to bear any losses beyond the loss of the shares so remaining in the firm; and that the estate of such deceased partner shall be held harmless from any claim or demand arising or made by any creditor of the firm against such estate, beyond the amount of the capital or value of the shares left in said firm as herein above provided." The representatives of such deceased partner could at any time on notice in writing to the firm withdraw the whole or any part of the interest of the decedent, the value of which was to be determined by agreement or arbitration, " and shall draw interest at the rate of five per centum per annum as a debt until paid for." But the firm was not required to pay in the aggregate in any year more than twenty per cent of the entire value of the decedent's interest at the date of death.

The testator with these conditions in mind gave by the fifteenth clause of his will the rest and residue of his property to trustees upon certain trusts under the following directions:

" I instruct my Trustees . . . to avail themselves of the provisions of Article V of the present Partnership Articles, — thus holding as a part of the principal of the trust fund one-third of the shares which at the time of my decease I may own in the firm of Ginn and Company, subject to the provisions of said Article. From said one-third provision must, if necessary, be made to carry out the contingent provisions hereinabove set forth for my sons; but

my Trustees may find it practicable to carry out in whole or in part said provisions for my said sons from the other two-thirds of my shares held in the firm at the time of my death, in which case I authorize and instruct my Trustees to hold said one-third as a part of the principal of the trust fund. If, prior to my death, said Article V shall be modified or changed, I authorize and instruct my Trustees to avail themselves fully of the opportunities given in such modified or substituted Article with relation to leaving a portion of my estate invested with the house of Ginn and Company; provided, however, that if the conditions should so change as to make it in the judgment of the then Trustees clearly desirable that the whole or a part of the shares so left in the publishing house shall be disposed of, authority is given to the Trustees to make such disposition, liquidating said shares under the Partnership Articles. I do not, however, desire such liquidation to take place unless in the judgment of my Trustees such change is clearly in the interest of my estate.

" Lest my Trustees should feel that so large a part of my estate will be invested in Ginn and Company as to make it incumbent upon them to withhold any expenditure of the income of the estate for the purpose of the Peace cause, — withholding it for the benefit of my family and other beneficiaries, — until my interest in said firm is substantially liquidated, I expressly hereby provide that the investment of the funds of the estate with the firm of Ginn and Company under the provisions of the Articles of Copartnership and of this Will shall be deemed a safe and proper investment for Trustees to continue as provided in said Articles and in this Will, unless and until there shall be a radical change in conditions affecting the soundness and prosperity of the house of Ginn and Company; to the end that income derived from said firm as interest or dividends, or both, under the Partnership Articles, shall be considered income immediately applicable to the purposes of this will."

It is contended by the trustees that when this clause is read with the fifth article of the copartnership agreement, the testator intended that his estate should succeed him in the firm with all the rights and responsibilities that he

possessed when living. It may be as said in *Parkhurst* v. *Ginn*, 228 Mass. 159, 174, " that a large part of the fund is bound up in the fortunes of a single business adventure, which apparently has been prosperous for many years," and which gave no indication of decadence when he made his will. But it must be assumed he had not forgotten that he had agreed that his representatives should not become partners, and the provision authorizing them to vote on the shares has little, if any, force if it is held that they took his place, because if the estate as a partner continued in the business, it would have all the rights of an active managing partner. While in the case at bar as in *Stearns* v. *Brookline*, 219 Mass. 238, the surviving partners upon the testator's death were to continue the business, the trustees are given authority in their discretion to withdraw in liquidation either wholly or partially his shares from the firm's assets under the conditions provided for in article five of the partnership agreement. It cannot be implied therefrom that a substitution of his estate for himself was proposed where no directions are found that the trust estate is to be thus delimited and administered. The trustees moreover are not only instructed to avail themselves of the right to permit a portion of the estate to remain in the partnership as an investment, but they have full authority in their discretion to liquidate all the shares when in the management of the trust it is deemed expedient. The agreements between the firm and the trustees fixing the valuation of the shares, the restatement of the capital, the reduction in the holdings of the trust estate, the payments in cash for surrendered shares, until on January 21, 1919, there remained only two thousand shares valued at $200,000, are details of administration and adjustment in conformity with the will and intention of the testator.

It follows that the moneys received by the trustees from the firm by reason of their ownership of shares during 1918 and 1919 are to be classed under the articles of copartnership and the testator's will as returns on the investment, and are taxable as income under St. 1916, c. 269, §§ 2, 5, 9, 14. The agreement of November, 1920, for a dis-

solution of the old firm and the formation of a new partnership by the members to take over the business and assets as of January 1, 1920, did not thereafter constitute the trustees as partners in the new firm. The articles of the new firm expressly declared, that the interest of the estate should continue if the trustees consented, and their consent having been duly given they were entitled under the terms of the agreement to receive seven per cent yearly on $200,000, the value of the remaining interest of the estate, payable quarterly before any division of net profits, and " to receive and require payment by the new firm of the principal amount . . . if the representatives of said estate hereafter elect to call the same, said principal in that event to be paid, with interest. . . ." A further provision that the amount due the estate should share in the profits of the firm, but not the losses, is qualified by the stipulations relating to interest just quoted. The intention of the parties to be ascertained from the language they used is, of course, the true canon of construction. The trustees and members of the firm did not associate themselves with the intention of carrying on a joint business, to the capital of which the trustees contributed what remained of the investment of the trust estate, the profits derived therefrom to be shared between them, and that they should be liable to creditors for firm debts. The essential elements of a general business partnership are not shown by the record. *McMurtrie* v. *Guiler*, 183 Mass. 451, 453, and cases cited. *Lord* v. *Plumer*, 237 Mass. 176, 178. *Francis* v. *McNeal*, 228 U. S. 695. It is unnecessary to review the agreements of February 21, 1919, and December 29, 1919, between the trustees and the firm, incorporated by reference in the articles of the new partnership. They are consistent with the construction we have given to the final agreement between the firm and the trustees. The amount received by them in 1920 was also taxable income. It cannot be distinguished in character from the payments made by the partnership in 1918 and 1919. St. 1916, c. 269, §§ 2, 5, 9, and 14, as amended by St. 1920, c. 404.

The second question arises under the further conten-

tion of the trustees, that because the original taxes levied in 1918 and 1919, which have been paid were erroneously computed, and exceeded the amount legally assessable they are entitled to have all the assessments treated as a single tax, and the taxes in question computed and adjusted on that basis so that the alleged errors may be corrected and abatements granted. It is argued that the second assessment for those years should be limited to the amounts, if any, shown by the original assessments to fall short of the total taxes legally due for each year. We do not however pause to review the computations in the agreed facts, based upon the theory that the assessments in each year should be treated as a whole, and if thus considered, the errors alleged plainly appear. The additional tax which the commissioner may levy under St. 1916, c. 269, § 14, as amended by St. 1920, c. 404, is separate and distinct from the original tax computed on the returns of the trustees duly filed, but which apparently did not show the total income received during the entire taxable year. It is an additional tax authorized by statute and not a tax on property omitted by the taxing power when the original tax was assessed, as in *Bartlett* v. *Tufts*, 241 Mass. 96, and cases cited. The statute is explicit. " If the tax commissioner discovers from the verification of a return filed under this act, or otherwise, that the income of any person subject to taxation under this act, or any portion thereof has not been assessed," he may within certain limitations, which are not material here, assess the income after " notice to the person so to be assessed of his intention, and such person shall thereupon have an opportunity within ten days after such notification to confer with the tax commissioner in person or by counsel or other representative as to the proposed assessment." The commissioner at the expiration of ten days from such notification " shall assess the income . . . subject to taxation, or any portion thereof, which he believes has not theretofore been assessed," and he shall thereupon give " notice to the person so assessed under the provisions of section fifteen of this act, and the tax shall be payable fourteen days after the date of such notice. The provisions

of this act in respect to the abatement and collection of taxes shall apply to a tax so assessed." If the petitioners were of opinion that the original taxes ought to be abated they should have complied with the provisions of St. 1916, c. 269, § 20, relating to abatements, but not having done so the question is not open on the record. See St. 1922, c. 382.

By agreement of parties the additional tax assessed March 1, 1921, is to be partially abated for the amount of $55.15, which sum with all costs and interest thereon from the date of payment of the tax is to be repaid to the petitioners by the State treasurer in the first case. But in the second and third cases judgment is to be entered for the defendant for his expenses and costs to be taxed by the Superior Court. St. 1909, c. 490, Part I, § 80, St. 1916, 269, § 20. *Wheelwright* v. *Tax Commissioner*, 235 Mass. 584. *Raymer* v. *Tax Commissioner*, 239 Mass. 410, 411.

*So ordered.*