RAYMOND W. SCHMITZ AND JEANNETTE SCHMITZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent STEPHEN SCHMITZ, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schmitz v. Commissioner
Docket Nos. 1066-76, 1067-76.
United States Tax Court
T.C. Memo 1978-317; 1978 Tax Ct. Memo LEXIS 194; 37 T.C.M. (CCH) 1323; T.C.M. (RIA) 78317; August 15, 1978, Filed *194 A father and two sons were equal partners in a cattle ranch. They orally agreed that upon the father's death, the sons would pay their mother 20 percent of the gross receipts from steer sales in order to provide her with support. Held, the payments in question were made pursuant to this agreement and represent the mother's distributive share of the partnership receipts. Raymond W. Schmitz and Jeannette Schmitz, pro se. S. Clay Freed and Stewart C. Walz for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in income tax as follows: [1]
Docket No. Petitioners *02*Deficiency 1066-76 Raymond W. Schmitz and 1972 $ 642.24 Jeannette Schmitz 1973 1,337.16
1067-76 Stephen Schmitz 1972 722.51 1973 1,523.79 The only issue presented to us for consideration is whether Raymond W. Schmitz and Stephen Schmitz properly excluded or deducted amounts on their partnership returns which were allegedly paid to their mother. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this *195 reference. Petitioners, Raymond W. and Jeannette Schmitz (hereafter Raymond and Jeannette), husband and wife, filed joint Federal income tax returns for the years 1972 and 1973. They resided in Brockton, Montana at the time their petition herein was filed. Petitioner, Stephen Schmitz (hereafter Stephen), filed Federal income tax returns for the years 1972 and 1973. [2] He resided in Brockton, Montana at the time his petition herein was filed. In the early 1900's Joseph and Anna Schmitz (hereafter Joseph and Anna), the father and mother of Raymond and Stephen, started a cattle ranch in Brockton, Montana. Although raising cattle was their primary business, corn, wheat and other farm goods were also grown on the ranch. During the 1930's both Stephen and Raymond became one-third partners in the ranch with Joseph. All three provided services and participated in the ranch's management. Anna provided some services unconnected with the cattle but otherwise related to the ranch, but by 1972 she was 82 years old and could *196 do very little. On June 6, 1957, all the land used by the partnership to conduct its ranching operations was sold by Anna and Joseph to Raymond and Stephen for $ 5,000. Upon Joseph's death in 1958, Anna inherited his one-third interest in the cattle and equipment used in the cattle partnership and Raymond and Stephen continued working the ranch. [3] *197 For each of the years 1972 and 1973, the Federal partnership returns filed by the Schmitzes listed Stephen and Raymond as the only partners. However, prior to Joseph's death, Raymond and Stephen orally agreed with their father that they would continue to pay Anna for life one-fifth of the yearly gross steer sales after his death in order to provide her with a sufficient income. Additionally, Anna was not to bear any losses on steer sales, and if there were no sales in a year, Anna would receive nothing. Raymond and Stephen never considered their mother to be a partner in the cattle farm, but they did believe she was entitled to the 20 percent interest on the steer sales and continued to pay her this amount out of the proceeds from the sales. From 1958 to 1976, the payments to Anna totaled over $ 42,000. At the time of Joseph's death, the cattle herd consisted of approximately 200 head of breeding cows and an undisclosed number of bulls. About 200 calves were born each year, half of which were steers and half of which were heifers. The size of the herd remained substantially the same after Joseph's death. On February 5, 1976, Raymond and Stephen purchased Anna's one-third of the breeding stock pastured on the ranch for $ 13,333.33 (one-third of the 200 cows at the assessed value of $ 200 per head). In 1972, the partnership paid Anna $ 5,215.65. This amount was deducted as pasture rent on the 1972 partnership return; however, this amount actually reflected 20 percent of the gross sales of steers (before any deductions for expenses, etc.). Anna did not share in any of the profits from grain sales or agricultural program payments. In 1973, Anna received $ 7,001.14 from the partnership or 20 percent of the gross steer sales of $ 35,005.70. *198 This amount was excluded from the partnership income entirely which showed $ 28,004.56 income from the sale of steers. The $ 7,001.14 was reported by Anna on her income tax return for 1973. OPINION Prior to Joseph's death in 1958, Joseph, Raymond, and Stephen were equal partners in a cattle ranch. Raymond and Stephen promised their father that after his death they would pay one-fifth of the annual gross receipts from the sale of the ranch's steers to Anna in order to provide her with sufficient income on which to live. In Joseph's will, he bequeathed to Anna all of his property (thus including his interests in the partnership to the extent allowed under Montana law). The question which we must answer is whether payments made in 1972 and 1973 pursuant to the oral agreement were made to Anna as her share of profits in the partnership. Respondent contends that the partnership was not obligated to make the payments to Anna and that the payments were in the nature of support. We must first look to Montana law to ascertain the extent of Anna's rights (if any) in the partnership profits. [4] Under Mont. Rev. Codes Ann. sec. 63-503(4) (1947), there was a technical dissolution of the partnership *199 upon Joseph's death in 1958. [5]Mont. Rev. Codes Ann. sec. 63-514 (1947) provides that: 63-514. Rights of retiring or estate of deceased partner when the business is continued. When any partner retires or dies, and the business is continued under * * * [conditions met here], without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall *200 receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option or at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership; provided that the creditors of the dissolved partnership as against the separate creditors, or the representative of the retired or deceased partner, shall have priority on any claim arising under this section, as provided by section 63-513(8). Respondent assumes that any payments made by the partnership to Anna must be either for profits or interest for use of Anna's capital in the partnership or for support payments. He then argues that because the amount of payments was unrelated to either the value of Anna's share of capital or to the net profits of the partnership, they cannot be interest payments or profits in lieu of interest and, therefore, must be payments made by the partnership without legal obligation. [6] *201 Petitioners maintain that they were legally obligated to make the payments. We disagree with respondent's basic assumption.To properly analyze the payments' character, we must deal first with the effect to be given the oral agreement between Joseph, Raymond, and Stephen (which respondent ignores). [7] *202 Mont. Rev. Codes Ann. sec. 63-514 sets forth the rights of the deceased partner's estate when the business is continued unless otherwise agreed. Thus, the rules governing accountings between partners upon dissolution and the rights of surviving partners are subject to agreements entered into which may be contrary to the usual statutory rules established in the absence of such agreements. Balafas v. Balafas,263 Minn. 267, 117 N.W. 2d 20 (1962); Sorokach v. Trusewich,13 N.J. 363, 99 A. 2d 790 (1953). [8] Here, the agreement modified the distributive shares each partner was to receive in such a manner that Anna received less than she otherwise would have received had she retained a one-third interest in the profits and losses *203 of the ranch. Anna retained Joseph's one-third ownership in the cattle and equipment, however, and upon liquidation of her 20 percent interest in the gross receipts of the steer sales, Anna received the full fair market value of her one-third interest in the cattle and equipment. [9]
Under section 761(c), [10] the partnership agreement includes any modifications of the partnership agreement agreed to by all the partners. Section 1.761-1(c), Income Tax Regs., specifically provides that such modifications may be oral. All the parties to the partnership agreed to the modification, and there is no dispute as to its terms. Therefore, the oral agreement is a valid modification of the original partnership agreement pursuant to the regulations. We also believe that the agreement is binding under Montana law. The fact that the agreement was to take effect upon Joseph's death does not result in a testamentary disposition. The general rule is that such agreements are binding, *204 even if not in writing. Balafas v. Balafas,supra;Stearns v. Inhabitants of Brookline,219 Mass. 238, 107 N.E. 57 (1914). Finally, we believe that the agreement was supported by adequate consideration. Anna neither participated in the management of the partnership nor provided services to it. One would expect, therefore, for Anna to take a lower profit share than Joseph. Thus Stephen and Raymond provided consideration by their agreement to provide Anna with 20 percent of gross receipts in the steers, while Joseph provided the surviving partners with use of his share of the partnership assets. In addition, the reciprocal promises of the partners to operate (or remain operating) as a partnership furnish the necessary consideration for this later agreement which by its terms became incorporated into the original agreement. See Balafas v. Balafas,supra, and section 1.761-1(c), Income Tax Regs.
Thus, we conclude that Anna had a property right under Montana law to 20 percent of the gross receipts of the partnership steer sales. We believe that the fact that this amount was arrived at solely by the partners' estimate of how much Anna needed for her support does not change this result. *205 [11] Because this interest is taxable to Anna as her share of partnership profits, it is not taxable to the remaining partners. Sections 61, 701, 702, and 704. Decisions will be entered for the petitioners.
Footnotes
1. These cases were consolidated for trial, briefing, and opinion.↩
2. It is unstated in the record where Stephen or Raymond and Jeannette's income tax returns were filed, but for both years all petitioners resided in Brockton, Montana.↩
3. Joseph's will, in pertinent part, provided that: "I give and devise and bequeath to my beloved wife, Anna Schmitz, all my property of every kind, character and description, real, personal or mixed, and wherever the same may be situated, of which I may die seized and possessed."
4. Cf. Sec. 1.736-1(a)(1)(i), Income Tax Regs., wherein it is stated that section 736, Internal Revenue Code, does not apply if the estate or other successor in interest of a deceased partner continues as a partner in its own right under local law. In this regard, see also section 1.761-1(c), Income Tax Regs.↩, which states that as to any matter on which the partnership agreement, or any modification thereof, is silent, local law shall be considered part of the agreement. 5. For Federal income tax purposes, the partnership was not terminated. Sec. 706(c), Internal Revenue Code, and sec. 1.706-1(c)(1), Income Tax Regs.↩
6. Another possibility is that the payments were in liquidation of Anna's one-third interest in the partnership capital and thereby governed by section 736 of the Internal Revenue Code↩. It is quite clear that such payments were not so intended since in 1976 Anna received the full fair market value of her interest in liquidation. See also footnote 4.
7. Respondent nowhere challenges the bona fides of this agreement, and in fact accepts the petitioners' testimony (which we also find to be credible) that they always intended to make these payments. Respondent does contend, though, that petitioners did not make the payments in question. We found in our findings of fact that the payments were made. 8. Although normally a decision by one state court would have little precedential value in another state, this is not so where both states have enacted the Uniform Partnership Act in substantially the same form. In this regard, sec. 63-104(4) states that"this act shall be so interpreted and construed as to effect its general purpose to make uniform the law of those states which enact it." Finally, we note that sec. 63-514 (corresponding to sec. 42 of the Uniform Partnership Act) is substantially an enactment of the common law. 2 A.L.R. 2d 1084, 1086↩ (1948). Generally, under common law partners may agree that the capital of a deceased partner will remain in the business and the surviving partners will pay representatives of the deceased partner a share of the profits of the business. 68 C.J.S., Partnerships, sec. 294 (1950).
9. It is unstated in the record why she did not receive any amount on liquidation of her interest for the machinery.↩
10. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years at issue.↩
11. Petitioners apparently contended at one point that the 20 percent of gross receipts from the sale of steers was an approximation of Anna's one-third interest of gross profits from all sources reduced by her share of the costs, but this relationship has not been shown.↩