CATHERINE KAVANAUGH, executrix, *vs.* GEORGE W. JOHNSON.

Middlesex.    March 6, 1935. — May 1, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Contract*, Construction. *Partnership*. *Evidence*, Competency, Extrinsic affecting writing. *Interest*. *Equity Jurisdiction*, Partnership.

Although parol evidence should not be considered in construing an unambiguous partnership agreement in writing, it was proper to consider such evidence on the question whether the partners intended that insurance policies issued on their lives subsequent to the making of the agreement should be subject to provisions thereof pertaining to other such policies outstanding at the time it was made.

Provisions of a partnership agreement between two persons, each of whom had taken out a policy of insurance on his life payable to the other "as business partner of the insured," the premiums thereon being paid by the partnership, that upon the death of one partner the survivor should purchase from his estate his interest in the partnership after valuation of such interest by "a physical inventory," and should use for that purpose the proceeds of the policy on the decedent's life, and that if the value of the decedent's interest should be less than such proceeds, "the entire amount" of such proceeds "shall nevertheless be paid to" the estate of the decedent, were applicable where one of the partners died at a time when the value of the physical assets of the partnership was substantially less than the amount of its indebtedness, and notwithstanding its insolvency; and, furthermore, the estate of the decedent was entitled to receive from the survivor the proceeds of the policy without there being deducted therefrom one half of the excess of the partnership liabilities over its assets, where it also appeared that, although the partnership agreement provided that the partners should bear the losses of the business equally, the survivor took the assets and continued

the business and that each of the partners, after the making of the agreement and for the purpose of providing the survivor with cash to pay the debts and carry on the business, had taken out an additional policy on his life payable to the other as his partner and not subject to the agreement: an inference was warranted that the survivor was to assume the debts.

In the circumstances above described, the surviving partner was chargeable with interest on the life insurance money payable by him to the decedent's estate only from the date on which was made the "physical inventory" to determine the value of the decedent's interest in the partnership, not from an earlier date on which the survivor received such money from the insurance company.

In a suit in equity by the personal representative of a deceased member of a partnership against the surviving member to enforce provisions of the partnership agreement requiring the defendant to purchase the decedent's interest in the partnership, the final decree, which ordered the defendant to pay to the plaintiff a certain sum in accordance with such provisions, should also have ordered the plaintiff to release his right in the partnership upon payment of that sum by the defendant.

BILL IN EQUITY, filed in the Superior Court on April 6, 1934.

The suit was heard by *Pinanski,* J. The bill, material facts, and the final decree entered by order of the judge are described in the opinion. The defendant appealed.

*C. A. Warren,* (*N. R. Voorhis* with him,) for the defendant.

*N. B. Vanderhoof,* for the plaintiff.

PIERCE, J. This is a suit in equity brought by the executrix of the will of Thomas J. Kavanaugh, who died January 12, 1934, to reach the proceeds of four policies of insurance on the life of the plaintiff's testator, aggregating $13,266.67. The policies were payable to and their proceeds collected by the defendant as the surviving business partner of the insured.

The plaintiff's testator and the defendant up to the death of said testator had been copartners since as early as 1919, in the conduct of a printing business, under the name and style of "The Graphic Press." As early as April 1, 1919, a policy of $5,000 was written on the life of each partner, payable in the event of death to the survivor "as business partner of the insured." Subsequently, but prior to the

date of their written partnership agreement, three other policies were written on the life of each. When the written agreement of partnership, now before this court, was entered into, on March 11, 1927, policies aggregating $16,000 were in force on the life of each partner, all payable in the event of death to the survivor "as business partner of the insured." This partnership agreement expressly referred by numbers and amounts to three of the four policies on the life of each, and provided for the payment of the annual premiums from the partnership funds and for the disposition of the proceeds in the event of "the death of either of the partners." One policy of $4,000, issued June 22, 1920, on the life of each, was not included in the agreement and was not controlled thereby. In 1929 the partners took out other reciprocal policies of insurance on the life of each. The evidence warranted a finding by the judge that in 1931 the defendant was no longer in insurable health, and in consequence an "income bond" was taken out November 12, 1931, on the defendant to offset as nearly as possible a policy of $3,000, issued September 22, 1931, on Kavanaugh's life. The policies and "income bond" of 1929 and 1931 were not made subject to the provisions or control of the partnership agreement and were not intended by the partners to be within the purpose of the agreement. The policies of $5,000 dated April 1, 1919, were permitted to lapse on April 1, and August 12, 1933, respectively. The policies of $4,000, dated June 22, 1920, were permitted to lapse on June 22, and November 14, 1933, respectively. By reason of the lapse of policies, but two of those covered by the partnership agreement were in force on the life of each partner when the plaintiff's testator died on January 12, 1934. Upon his death the defendant, "as business partner of the insured" and the beneficiary named in all the policies on the life of the plaintiff's testator, received from the insurer the sum of $6,008.51 as the proceeds of the two policies then remaining in force on the testator's life, described in said partnership agreement, and the sum of $7,258.16 as the proceeds of the two policies on the testator's life taken out subsequently to the date of the

partnership agreement, which the trial judge found on suffi-
cient evidence in the record were not subject to the part-
nership agreement. These two sums totalled $13,266.67.
By reason of the finding and ruling of the judge that the
two policies issued after the agreement "are not subject to
the provisions of the partnership agreement" and the fact
that the plaintiff took no appeal therefrom, it follows that
the only issue for the determination of this court on the
defendant's appeal is whether the said $6,008.51 is an asset
of the partnership or of the estate of the plaintiff's testator.

The parts of the partnership agreement which are perti-
nent to said issue are printed in the margin.* On March 7,
1934, a physical inventory as required by the provisions of
said agreement was taken. This inventory disclosed that
the physical assets of the partnership were less by the sum
of $5,273.92 than its liabilities. The inventory also dis-
closed that the amount of the deceased partner's interest in
the partnership business was less than the amount received
by the defendant from the insurance company on the life of
said Kavanaugh. On the above facts which, in the main,
are not disputed by the parties, the defendant denied any
right in the plaintiff under the partnership agreement,
particularly under clause 4 of that agreement, to receive
any part of said insurance collected by him. The plaintiff

---

* ". . . it is agreed —

(1) That the first and all subsequent annual premiums upon said policies
shall constitute a charge against the partnership funds and shall be paid by
the firm when due.

(2) That in case of the death of either of the partners the amount, if any,
payable to such deceased partner's legal representative as his share of the
partnership assets shall be ascertained by a physical inventory to be made
as soon as may be possible or practical after the decease of such partner by
three disinterested appraisers, to be appointed as follows: one by the legal
representative of the estate of the deceased, one by the survivor, and the
third by the two so appointed, and in consideration of the payment of the
said annual premiums out of the partnership funds, and the agreements and
covenants herein contained, the surviving partner agrees to use the proceeds
of the said policies of insurance payable to him as beneficiary in making
settlement for the amount found to be due to the estate of the deceased
partner, as shown by the said inventory.

(3) That upon the death of either partner, the survivor agrees to purchase
from the legal representative of the estate of the deceased partner the interest
which he, the said deceased partner, had in the said partnership at the time
of his decease, and to use for or towards such purchase the proceeds collected
by him from the policies of insurance on said deceased partner's life; and
each partner hereby authorizes the legal representative of his estate, in case

thereupon brought this bill in equity and the judge found and ruled after a hearing "that the plaintiff is entitled to the entire proceeds of two policies issued by said Phoenix Mutual Life Insurance Company on the life of said Kavanaugh, being policies numbered 509218 and 510809 mentioned in said partnership agreement, said proceeds amounting to $6,008.51; and, the court ruling that the defendant is not entitled to maintain his counter-claim against the plaintiff of $2,636.96, it is ORDERED, ADJUDGED and DECREED that the defendant pay to the plaintiff the sum of $6,008.51 with interest from January 20, 1934; and that the defendant's said counter-claim be and it hereby is dismissed; and that execution issue in favor of the plaintiff and against the defendant for $6,008.51, with interest from April 6, 1934, and without costs to either party."

From the final decree the defendant duly appealed to this court "upon four grounds": (1) "because the trial court erred in construing the partnership agreement as requiring the defendant to pay over to the plaintiff the proceeds of the policies, notwithstanding the insolvency of the partnership"; (2) "because the trial court erred in decreeing that the defendant pay over to the plaintiff the proceeds of the policies without credit thereon, deduction therefrom, or otherwise contributing one-half of the lia-

---

of his decease, to sell to the surviving partner his interest in the partnership business for the amount of the valuation as fixed by such physical inventory, provided, however, that such inventory shall not include any amount paid by the insurance company under the deceased partner's policies of insurance.

(4) It being the purpose and intent of the partners that the proceeds of the insurance policies on the deceased partner's life shall be used by the survivor in purchasing the deceased partner's interest in the business, it is further agreed that the amount of the said deceased partner's interest in the business which is in excess of the amounts received from the insurance company shall be paid by the survivor to the legal representative of the estate of the deceased partner in such installments and at such times as to them may be deemed expedient and reasonable; and if the amount of the deceased partner's interest in the partnership business as determined by said inventory shall be less than the amount received from the insurance company, then and in that event the entire amount received from said insurance company shall nevertheless be paid to the legal representative of the estate of such deceased partner.

(5) It is agreed that, in case of the dissolution of said partnership during the lifetime of both of said partners, the said policies shall be considered as assets of the partnership, and the outgoing partner shall be entitled to retain the policies on his own life, provided·that he shall pay or cause to be paid to the remaining partner his share of the cash surrender value of said policies."

bilities of said partnership in excess of its assets"; (3) "because the trial court erred in charging the defendant with interest on the sum involved, from the date when he received the same, January 20, 1934, to the date of the entry of the decree"; and (4) "because the form of the final decree is inadequate to serve the requirements of the case." The defendant's counterclaim dismissed by the court, *qua* counterclaim, is not argued in the defendant's brief and is deemed to be waived.

In his answer the defendant admits that he, as surviving partner, is obligated to purchase the interest of his deceased partner, and admits that the interest of the plaintiff's testator was less than the amount received by the defendant from said Phoenix Mutual Life Insurance Company as the proceeds of said policies of insurance on the life of the plaintiff's testator described in said agreement of partnership. He declares his readiness to pay to the plaintiff the proceeds of said policies ($6,008.51) less one half of the excess of liabilities over assets ($2,636.96) as shown by the physical inventory made after the death of Kavanaugh as provided in the partnership agreement. This offer is otherwise stated by the plaintiff as follows: "the defendant offered to purchase the interest of his deceased partner by paying to the plaintiff the proceeds of policies . . . ($6,008.51), less the sum of $2,636.96, which is one-half of the excess of liabilities over assets as shown in said inventory." On the other hand the plaintiff contends that under the terms of the partnership agreement she is entitled to the entire proceeds of said two policies. The partnership agreement provides that "said parties [referring to said defendant and to the plaintiff's testator] are equal owners" of the partnership assets and entitled to share equally in the profits of the business.

The defendant in his brief in support of the first error assigned directs attention to the fact that the agreement contains the usual stock form that the partners were equal owners of the assets of the partnership and that they were both to devote their whole time and attention to the partnership business, and "that all gains, profits, and increase

that shall come or arise from or by means of their said
business shall be divided between them equally, and all
loss that shall happen to their said joint business by ill
commodities, bad debts or otherwise, shall be borne and
paid between them equally . . . [and] At the end of their
partnership the said partners will make, each to the other,
a full and correct account of all things relating to their said
business, and in all things truly adjust the same; and all
and every the stock and stocks, as well as the gains and
increase thereof, which shall appear to be remaining either
in money, goods, wares, fixtures, debts, or otherwise, shall
be divided between them equally." The agreement further
provides that "it is the desire of the said partners to pro-
tect each other from loss by reason of the death of either
of them, and for this purpose each has caused to be issued
upon his life three policies of life insurance . . . on the life
of said George W. Johnson, payable to said Thomas J.
Kavanaugh, and . . . [policies] on the life of said Thomas
J. Kavanaugh, payable to said George W. Johnson." The
intention of the parties to a partnership agreement is to be
given effect if possible, *Holcombe* v. *Commissioner of Corpo-
rations & Taxation*, 245 Mass. 353, 362, and is to be ascer-
tained by a consideration of the whole agreement, *Leach* v.
*Leach*, 18 Pick. 68, 75, and the agreement should be inter-
preted in the light of the situation of the parties to it.
*Funck* v. *Haskell*, 132 Mass. 580, 581, 582. It is a funda-
mental principle of substantive law, as distinguished from
adjective law, that parol evidence must be disregarded in
construing an unambiguous written instrument and that
such evidence should be disregarded even though admitted
at the trial by both parties without objection. *Mears* v.
*Smith*, 199 Mass. 319, 322. *Martin* v. *Jablonski*, 253 Mass.
451, 455. *De Pasquale* v. *Bradlee & McIntosh Co.* 258 Mass.
483, 488. In the case at bar there was no ambiguity or
mistake to be corrected, but the testimony of Jones, the
agent for the insurance company which issued the addi-
tional reciprocal policies and "income bond" in 1929 and
1931, was admissible, not to affect the construction of the
agreement, but as tending to show that the partners did

not intend that the new policies and "income bond" should, when issued, become subject to the insurance provision of the partnership agreement. It is quite apparent that the trial judge received the testimony by Jones only in proof that the additional reciprocal policies and "income bond" were not intended to be subject to said insurance provision. It is apparent that one of the main objectives of the agreement was to provide a method for the disposition of the interest of a deceased partner without disrupting the business as a going concern. Such an agreement, when not made with intent to evade the statute of wills, is valid. *Leach* v. *Leach*, 18 Pick. 68, 75. *Murphy* v. *Murphy*, 217 Mass. 233, 235–236. *Hale* v. *Wilmarth*, 274 Mass. 186, 189.

The defendant contends that the "primary and fundamental objective" of the agreement was "to protect each other from 'loss'" and much stress is laid on that part of clause 2 of the agreement (quoted in full in the margin) which reads: "That in case of the death of either of the partners the amount, if any, payable to such deceased partner's legal representative as his share of the partnership assets shall be ascertained by a physical inventory . . . ." The defendant deduces therefrom that the agreement is concerned solely with a situation where the assets of the partnership exceed the liabilities by some amount, and that the part of clause 4 (quoted in full in the margin) to the effect that, if the amount of the deceased partner's interest is less than the amount received from the policies, then the entire policy proceeds should go over to the legal representative of the deceased partner, applies only if there is a surplus of assets over liabilities. A short answer is that the partners in clause 2 were providing in a general way for the ascertainment of the value of the interest of a deceased partner, whereas in the part of clause 4 relied on by the plaintiff, they dealt specifically with a situation where the amount of the deceased partner's interest was less than the proceeds of the policies. The logical result of this contention is that if the assets shown by the physical inventory exceeded the liabilities by one dollar the rep-

resentative of the deceased partner would receive more than $6,000, and the survivor would receive the assets of the value of one dollar. If the liabilities so ascertained exceeded the assets by one dollar, the representative of the deceased partner would receive nothing, and this result, on the facts, speaks the claim of the defendant. It is difficult to believe that the partners intended that their legal representatives should indulge in such an act. Such a result is not equitable and should be avoided if possible. *Clark* v. *State Street Trust Co.* 270 Mass. 140, 153, and cases cited.

Under the construction placed on the agreement by the defendant the legal representatives of the deceased partners would be in a worse position than if the agreement had not been made. It is clear that all rights against the surviving partner are merged in the agreement and the representative has no rights outside the agreement. In the absence of the agreement the plaintiff would have been entitled to have the good will which was not included in the physical assets estimated as an asset of the partnership. *Costa* v. *Costa,* 222 Mass. 280, 282. The partnership was in existence as far back as 1919, when the first two reciprocal policies were issued. The good will may have been a valuable part of the assets. *Moore* v. *Rawson,* 185 Mass. 264, 271. Under the provision of the agreement that the partnership assets shall be ascertained by a "physical inventory" the plaintiff is precluded from requiring that the value of the good will be deducted from the amount of the partnership obligations. The premiums on the various policies taken out on the partners' respective lives were made "a charge against the partnership funds" and were to "be paid by the firm when due." The premiums consequently were partnership debts. *White* v. *McPeck,* 185 Mass. 451, 453. *Guthrie* v. *Foster,* 256 Ky. 753, 760–765. *Allen* v. *Hudson,* 35 Fed. Rep. (2d) 330, 331. In the absence of the agreement the proceeds of the policies were partnership assets, though the policies were payable to the defendant as a business partner of the deceased. G. L. (Ter. Ed.) c. 108A, § 8 (2). *Quinn* v. *Leidinger,* 107 N. J. Eq. 188, 191; affirmed 110 N. J. Eq. 663.

In the light of all the facts the plaintiff should receive under clause 4 the full amount obtained by the defendant on the policies covered by the agreement, without deduction for debts. The principle that in the absence of agreement partners share losses equally, *Lavoine* v. *Casey*, 251 Mass. 124, 127, is overcome by the principle that where one partner takes all the assets and continues the business only slight evidence is necessary to warrant the inference that the partner also assumes the debts of the firm. *Shaw* v. *McGregory*, 105 Mass. 96, 102. This construction is supported by the uncontradicted evidence that the policies and "income bond" of 1929 and 1931, which were not within the terms of the agreement, were taken out for the purpose of providing the surviving partner with cash to pay the debts and carry on the business, because in all probability there would be a good many debts and the partners felt that "whoever survived would need cash to pay those debts and go on with the business as survivor."

The defendant contends that the part of the decree granting interest from January 20, 1934, was error in that the physical inventory was had on March 7, 1934, as of January 12, 1934, the day of the death of Kavanaugh. This position is sound. Under the agreement the obligations of the surviving partner and the interest of the deceased partner could not be determined as to the amount to be paid until the filing of a report by the appraisers. This report was rendered on March 7, 1934; consequently the defendant was not in default before March 7, 1934. *Donahue* v. *Partridge*, 160 Mass. 336, 339. *Moore* v. *Rawson*, 185 Mass. 264, 277.

The defendant further asserts that the decree should order the plaintiff, as executrix of the deceased partner, to release her right as such executrix in the partnership upon the payment to her of $6,008.51 with interest from March 7, 1934. The decree should be amended in this particular. As so amended it is affirmed with costs.

*Ordered accordingly.*