[No. 32998. Department Two. June 23, 1955.]

W. L. REID COMPANY, *Respondent and Cross-appellant,* v. M-B CONTRACTING COMPANY, *Appellant.*[1]

[1]Reported in 285 P. (2d) 121.

*Allen, Hilen, Froude, DeGarmo & Leedy,* for appellant.

*Riddell, Riddell & Williams* and *Donald S. Voorhees,* for respondent and cross-appellant.

Rosellini, J.—This is a suit to recover the balance alleged to be due on a sale of overhead doors for use in the construction of a government warehouse. The plaintiff, an Oregon corporation engaged in the business of wholesaling builders' hardware, is the respondent and cross-appellant; and the defendant, a Washington corporation

engaged in business as a general contractor, is the appellant. We will refer to them as plaintiff and defendant.

The dispute as to the amount due arose in the following manner: In the spring of 1951, the Corps of Engineers issued specifications and invited bids for the construction of a warehouse at Elmendorf Field, in Alaska. Plaintiff, having learned that defendant was bidding on the prime contract, submitted to defendant its quotations on certain hardware mentioned in the specifications. Included in its bid was an offer to supply thirteen wooden overhead doors. Defendant obtained the prime contract and accepted plaintiff's bid as to the overhead doors and appurtenant hardware. By telephone, defendant notified plaintiff that three of the doors were to be metal covered as provided in an addendum to the specifications. A transmittal letter accompanying defendant's August, 1951, purchase order contained the following statement:

"It is understood that there will be an adjustment of this price to provide for metal covering Doors 44, 45, and 46."

Some time later, defendant requested a quotation on four additional doors, three to be metal covered. On October 9, 1951, plaintiff replied with the following offer:

"Following our letter of October 2, and in answer to your letter of September 24, we are pleased to quote you the sum of $2,165.00, covering the four (4) additional overhead doors that will be required on this warehouse. Three of these doors will be metal covered with 18-gauge metal as requested in your letter. In placing your order for this additional, we would appreciate your sending us the exact size of the doors that will be required. Also, we would like to know whether they are to be metal covered on both sides. . . ."

In a letter dated December 26, 1951, defendant's agent stated that the quotation was "entirely satisfactory." On January 17, 1952, plaintiff wrote a letter to defendant seeking information as to the specifications for the metal covering of doors 44, 45, and 46, and as to the sizes of the four additional doors. On January 24, 1952, defendant replied:

"The following doors are to be metal covered as per specifications contained in this letter.

"Doors 44, 45 and 46
"3 only doors 10′ 2-½″ X 12′ 1″ Total 6 doors.
"Specifications:
" '5-28 subdivision b. METAL COVERING: Doors shall be covered on both sides, edges, and ends with 24-gauge, zinc-coated steel sheets conforming to the requirements of Federal Specifications QQ-I-716. Seams shall be double locked and the sheets shall be nailed through the seams and the finished seams shall cover the nailed heads. Nails shall be not more than 6 inches on center. Sheet metal shall be applied under SECTION IX—MISCELLANEOUS METALS AND SHEET METAL, GENERAL—of these specifications.'

"The referred to GENERAL SPECIFICATIONS can undoubtedly be examined by you at the Corps of Engineers Office in Portland.

"This metal covering is to be furnished to us at approximately $25.00 per door."

There were no specifications expressly relating to the manner in which metal was to be applied to the overhead doors. Defendant extracted from the original specifications the section relating to the application of metal to sliding doors and incorporated it in its letter of January 24, 1952, quoted above, as specifications to be followed by the plaintiff in the application of metal to the overhead doors. By this letter, the plaintiff was advised for the first time that the overhead doors were to be covered with a type of metal application known as Kalamein.

In the trade, a Kalamein or "metal clad" door is one to which the metal is applied evenly on all surfaces of the door: edges, top, bottom, inside, and outside.

Plaintiff sought bids from manufacturers and discovered that the cost of the metal covering would be greatly in excess of $25 per door. Mr. Reid, president of the plaintiff company, testified that he advised defendant of this fact by telephone; that at the time of the conversation the best (or only) bid he had been able to obtain was approximately $780 per door; and that defendant displayed little concern over the cost, but admonished him to get the doors covered as quickly as possible. Plaintiff secured a lower quotation from a Portland manufacturer and placed the order there.

It appears that the government specifications required only doors 44, 45, and 46 to be metal covered, and the defendant ordered the metal covering of the three additional doors on its own initiative. The six doors as ordered were identical in size and design. In June, 1952, the defendant pressed for delivery of the six metal-covered doors; and upon learning that only three were near completion canceled its order for metal covering of three doors, but did not specify whether the August or October order was the one canceled. To obtain immediate delivery of the three metal-covered doors, defendant paid to the Portland manufacturer the sum of $131.30 to reimburse it for overtime paid to its employees. All of the wooden doors ordered by the defendant were delivered, as well as the three metal-covered doors, which were installed in the government warehouse for openings designated 44, 45, and 46. There is no contention that the work was not done in a satisfactory manner.

In this action, the plaintiff sought to recover the sum of $1,667.69, as compensation for covering the three overhead doors with metal, contending that the actual cost was the reasonable value of the metal covering. The trial court found that the reasonable value of metal covering of the doors was the sum of $400 per door, less the sum of $131.30, expended by the defendant, or $1,068.70, and entered a judgment in the sum of $2,525.14, which included an item of $1,456.44 not here in dispute. Defendant excepted to the entry of that judgment as being excessive; plaintiff excepted to it as being inadequate.

On this appeal, defendant does not argue or suggest that plaintiff was ever bound to deliver metal-covered doors for $25 per door or approximately that sum. It does argue that plaintiff was bound to furnish three metal-covered doors under its October quotation (approved by defendant in December and hereafter referred to as the "October contract"); that there was no showing that the order for these particular doors was canceled; that only three doors were delivered; and that plaintiff is entitled to collect no more than the price quoted in its letter of October 9, 1951.

■ Defendant assigns error to the findings of fact that the cost to the plaintiff of the metal covering was $1,667.69, contending that there is no evidence to support it. Defendant argues that because the trial court sustained an objection to the introduction of an invoice which did not segregate the charges for the metal covering and the wooden cores, the finding is without any evidence to sustain it. However, the record discloses that without objection the plaintiff's president was allowed to testify to the actual cost of the metal covering, based upon the invoice price, less a deduction for three wooden cores. The credit allowed was the amount which the defendant had agreed to pay for the wooden cores, and for which the plaintiff had agreed to furnish them under the August contract. This evidence was sufficient to sustain the trial court's finding.

Defendant admits that if the doors delivered were those ordered in August, it was obliged to pay their fair and reasonable value. While there is no express finding that the three metal-covered doors were furnished in response to defendant's August purchase order, other findings, to which no exception is taken, establish this fact. The doors were installed in openings originally designated 44, 45, and 46. Doors for these openings were ordered in August. The trial court found that thirteen doors were delivered under the original contract and that *four additional wooden* doors were furnished. These would necessarily be the four doors supplied under the October contract if such a contract were in existence at the time they were delivered. Only by being patently inconsistent could the court have made a finding that the metal doors were supplied under the October contract. It follows, then, that the metal-covered doors were among the thirteen delivered under the original contract. This being the case, defendant had agreed to pay the fair and reasonable value thereof.

Granting that the doors were supplied under the August contract, defendant argues that, if the October contract included three Kalamein doors, it is entitled to deduct from the price quoted in that contract the reasonable value of the doors not delivered, or $1,200. Defendant further argues

that the finding on which the court based its conclusion that the October contract did not contemplate the use of Kalamein, is insufficient.

The finding to which exception is taken pertains to the state of mind of plaintiff's agent when he quoted a price of $2,165 for four doors, three to be metal covered. The court found that he estimated that the metal covering would cost $117, and did not contemplate that plaintiff would be required to furnish Kalamein constructed doors. Properly, the court should have found either that the contract did not specify such construction and the parties did not contemplate that it would be required, or that plaintiff's misconception was known to defendant. Either fact has substantial support in the evidence.

The defendant's knowledge of the plaintiff's mistake of fact can be reasonably inferred from the finding that its president knew that the type of work required could not be done for $25 per door, nor any sum approximating that amount, since before his company placed the original order with the plaintiff, Mr. Miller, president of defendant corporation, had received from an Alaska concern a quotation of $400 per door for applying metal to doors 44, 45, and 46. Consequently, it must have been apparent to him that plaintiff did not realize what would be demanded of it under the specifications.

But, assuming that the October contract did contemplate that three of the four doors would be Kalamein processed, we cannot agree with defendant's contention that, when the contract for metal covering was canceled, it became entitled to deduct from the quoted price the reasonable value of such covering, or $1,200. Such a deduction would be proper only if the parties had expressly agreed to it when they agreed upon the cancellation, or if the quoted price had included the reasonable value of the work and the contract had been divisible. The plaintiff offered to supply the four doors for a lump sum, not apportioned as to wooden cores and metal covering. As the trial court rightly determined in arriving at the amount which should be paid for the four additional wooden doors, the plaintiff's

subjective estimate of $117, as the amount which the metal covering would cost, cannot be used to render the contract divisible. The court allowed plaintiff the reasonable value of these doors, to which it was entitled under the sales act and under the common-law doctrine of *quantum meruit*, not the contract price less the estimate of $117.

When two or more articles are sold together for a gross sum, or the purchase price is not apportioned to the different articles, the contract is entire and the price cannot be divided. *Darst v. Meduna*, 15 Wn. (2d) 293, 130 P. (2d) 361 (1942). See, also, *Bariel v. Tuinstra*, 45 Wn. (2d) 513, 276 P. (2d) 569 (1954).

■ . Therefore, the cancellation of the order for metal covering rescinded the entire contract, since the parties were left without an agreement as to the price to be paid for the four wooden doors to be supplied in place of the doors described in the contract. Defendant having ordered and accepted delivery of four wooden doors, and the price not having been fixed by the contract, under Laws of 1925, Ex. Ses., chapter 142, § 9, p. 359 (Rem. Rev. Stat., § 5836-9 [*cf*. RCW 63.04.100]), defendant was obliged to pay a reasonable price for them. The court's finding as to their value and the portion of the judgment based thereon have not been challenged.

■ Since, under the established facts, an inference necessarily arises that the metal doors were supplied under the August contract, and since the October contract was canceled, the amount of the plaintiff's recovery would be the same whether or not the latter contract required the delivery of Kalamein type doors. Consequently, any defect in the finding of fact which supported the conclusion that the October contract did not contain such a requirement, is harmless error. An error which does not materially affect the merits of the controversy is not ground for reversal. *In re Bailey's Estate*, 178 Wash. 173, 34 P. (2d) 448 (1934).

■ Defendant assigns error to the court's denial of its motion for a new trial, based upon surprise, contending that it had no notice under the pleadings that it would be required to rebut evidence of the reasonable value of the

doors delivered. The August agreement to reimburse plaintiff for metal covering three doors was alleged in the amended complaint and admitted in the answer. Plaintiff alleged that the reasonable value of the three doors delivered was $1,667.69. In its answer, defendant denied this allegation, and it thereupon became an issue in the cause. The claim of surprise is without merit, and the motion was properly denied.

On cross-appeal, plaintiff assigns error to certain of the court's rulings in refusing to admit exhibits which plaintiff maintains would have established that the three metal doors canceled were those ordered in response to its October quotation. Since we have inferred this fact from the findings made and entered, it is unnecessary to discuss these assignments.

Plaintiff further assigns error to the court's finding as to the reasonable value of the metal covering, maintaining that it does not rest upon competent evidence. Mr. Miller, president of the defendant company, testified that prior to the time the contract was awarded to the plaintiff, he had a quotation from Federal Roofing, a subcontractor, for metal covering the doors in its Anchorage, Alaska, plant. In answer to the question "and, what was the quotation you received?" his answer was "$400, as I recall . . . per door."

There was no testimony that the Alaska bid represented the reasonable value of the metal covering. An unaccepted offer to sell material and services does not prove the reasonable value of the material and services offered to be furnished. We have held that proof of indebtedness incurred or paid for medical services, in the absence of evidence of reasonable value therefor, is insufficient to support a verdict or a judgment. *Carr v. Martin,* 35 Wn. (2d) 753, 215 P. (2d) 411 (1950); *Torgeson v. Hanford,* 79 Wash. 56, 139 Pac. 648 (1914). The same principle applies here.

The plaintiff submitted evidence that the cost of $1,667.69 was the fair and reasonable value of the metal covering. Since the evidence offered by defendant as to

reasonable value of the metal covering was without probative value as to that issue, the only credible and undisputed evidence that remained in the record indicated that the cost of $1,667.69 for the metal covering was reasonable.

We have held that where there is no conflict in the testimony and the sole question on appeal concerns the proper conclusions to be drawn from practically undisputed evidence, this court has the duty of determining for itself the proper conclusions to be drawn from the evidence in the case. *Shultes v. Halpin,* 33 Wn. (2d) 294, 205 P. (2d) 1201 (1949).

The plaintiff was entitled to recover the reasonable value of the metal covering of the three doors, which, under the undisputed evidence, was $1,667.69, less $131.30, expended by defendant to expedite the shipment of the doors, or $1,536.39.

Therefore, the portion of the judgment from which the cross-appeal is taken is modified to read that the plaintiff have and recover judgment in the sum of $2,992.83, together with its costs herein to be taxed. The judgment in all other respects is affirmed.

HAMLEY, C. J., MALLERY, HILL, and WEAVER, JJ., concur.