[No. 39519.    Department Two.    March 6, 1969.]

GRANT D. ASHLEY, *Appellant,* v. RICHARD V. LANCE *et al., Respondents.*\*

*\*Reported in 451 P.2d 916.

*Benn R. Agor*, for appellant.

*Harry C. Wilson, Aiken, St. Louis & Siljeg*, by *Charles E. Siljeg*, for respondents.

HILL, J.—We are concerned on this appeal with the remedies available to a member of a 5-man medical partnership when four of the partners act in concert to dissolve the partnership and start a competitive practice.

For 5½ years prior to June 15, 1953, Dr. Grant D. Ashley was engaged in the practice of medicine in Bothell, Washington. On that date, he and Dr. Richard V. Lance, a defendant in this action, entered into a partnership known as "Doctor's Clinic" for the practice of medicine in a building owned by Dr. Ashley. In 1954 Dr. Ashley built a larger building, and Dr. Phil Gardner was taken into the partnership. Thereafter the remaining defendants (Dr. Walter E. Sundstrom and Dr. James T. Monahan) were admitted to the partnership, each coming in at a different time. Each addition to the partnership entailed substantial alterations in the clinic building, which were paid for by Dr. Ashley. A new partnership agreement was signed each time a new partner was added, but under the section captioned *"Name and location of partnership,"* the same wording was used, *i.e.*,

> The partnership shall be known under the name and style of "DOCTOR'S CLINIC," and the site of its operation shall be at the offices and building owned by Dr. Ashley at 18504 Bothell Way N.E., Bothell, Washington.

In the spring of 1965, dissension arose between the partners. Although the agreement had always prohibited the

partnership from holding real estate, the other four partners demanded that Dr. Ashley sell the clinic property to the partnership. Dr. Ashley refused to do this, but offered to sell the clinic property and all of his interest in the partnership. The other four partners rejected the offer, contending that the price was unreasonable although they made no counter-offer.

The relationship between Dr. Ashley and the other partners continued to deteriorate. On February 9, 1966, the other partners gave written notice to Dr. Ashley that they intended *to dissolve* the partnership effective May 1, 1966; they made it very clear that they were *not withdrawing* from the partnership. The reason for the distinction is quite apparent since the partnership agreement contained the following restrictive covenant:

> If a partner withdraws voluntarily, it is agreed that he shall not conduct the practice of medicine and surgery within ten miles of the then City Limits of Bothell, King County, Washington, for a period of Ten (10) years from date of withdrawal. If this restriction be violated, the withdrawing partner shall forfeit all rights to accounts receivable and agrees to pay to the partnership as liquidated damages the sum of Ten Thousand ($10,000.00) Dollars.

By that date (February 9, 1966), the intent of the foursome to go into a competitive medical practice was obvious —not only "within ten miles of the then City Limits of Bothell," but in a building they were constructing within 300 feet of the "Doctor's Clinic" building owned by Dr. Ashley. The name they adopted for their new partnership was the "Bothell Medical Clinic."

To avoid the restrictive covenant in their partnership agreement with Dr. Ashley, they devised the legalistic theory that they would dissolve their partnership with Dr. Ashley and not withdraw therefrom. The partnership agreement makes no reference to dissolution, but does provide that "[t]his partnership shall not automatically terminate upon the death or withdrawal of a partner."

Dr. Ashley began this action in March, 1966, against the members of the foursome individually,[1] alleging that their action in constructing a clinic adjacent to his was part of a conspiracy to deprive him of his business and property. For this conspiracy he asked damages in the sum of $350,-000. He further asked for a judgment of $10,000 against each of the foursome, plus forfeiture to him of the accounts receivable of the partnership for their violation of the restrictive covenant.[2]

On December 5, 1966, the trial court orally granted the foursome's motion for a summary judgment as to the claim based on the restrictive covenant.

Despite the contention that this covenant was intended, among other purposes, as a protection for Dr. Ashley's investment and practice, the trial court—relying on the obvious, that one person cannot be a partnership—held that the covenant was intended to cover only the situation where at least two of the partners remained in the partnership and that it was not intended to cover the situation where all but one of the partners withdrew from the partnership, calling it a dissolution.[3] The trial court held that since a partnership no longer existed, the restrictive covenant was no longer enforceable.

On the same day, the trial court ruled on its own motion that there should be an accounting covering the partnership assets in the conspiracy action. The defendants had not sought an accounting in their answer or in any subsequent pleadings.

On December 15, 1966, after Dr. Ashley's motion to reconsider the granting of the summary judgment was

---

[1] Wives were made parties because they had signed the partnership agreement and because community property · interests and liabilities were concerned. We shall refer only to the doctor-defendants and usually as the "foursome."

[2] Dr. Ashley also sought to impose a constructive trust on the foursome's newly constructed clinic property because of their breach of a fiduciary duty owed to the partnership, but this claim was dismissed with prejudice upon Dr. Ashley's motion.

[3] A dissolution of a partnership is not a termination thereof; RCW 25.04.300. Any partner can, by unilateral action, dissolve a particular partnership by withdrawing from it. RCW 25.04.290.

denied, he moved for a voluntary nonsuit as to the claim alleging a conspiracy. The defendants objected on the grounds that there had been interposed a claim for the accounting of the partnership assets and that under RPPP 41.08W[4] (now CR 41(a)), a voluntary nonsuit could not be taken except in the discretion of the court for good cause shown under such circumstances. The trial court agreed and denied the motion. Dr. Ashley elected to stand on his motion, and the court dismissed the conspiracy claim with prejudice. Dr. Ashley appeals from both the summary judgment on the claim based on the restrictive covenant and from the dismissal of his conspiracy action with prejudice.

In interpreting the partnership agreement, including the restrictive covenant, the agreement must be read as a whole. It must also be construed in the light of the history of the partnership and its purpose. *Bradford v. Billington*, 299 S.W.2d 601 (Ky. 1957); *Kavanaugh v. Johnson*, 290 Mass. 587, 195 N.E. 797 (1935).

Dr. Ashley has been practicing in Bothell since January 1, 1948. He had an established practice and owned his own building before any partnership was formed. Dr. Lance joined him on June 15, 1953, after only a few months of private practice. Doctors Gardner, Sundstrom, and Monahan joined the partnership with no previous experience in private practice.

The partnership was exclusively for the practice of medicine; no partner made any capital contribution; the partner-

---

[4]"An action in the superior court, tried either with or without a jury, may be dismissed by the court and a judgment of nonsuit rendered upon the motion of the plaintiff at any time before plaintiff rests at the conclusion of his opening case, unless the defendant has interposed a set-off as a defense, or seeks affirmative relief growing out of the same transaction or claim, either legal or equitable, to the specific property or thing which is the subject matter of the action: *Provided*, That the trial judge may thereafter entertain a motion for a voluntary dismissal without prejudice by the plaintiff upon good and sufficient cause in support thereof being first shown, but in such event the granting or refusal of such motion, and the imposition of terms as a condition precedent to the granting of such motion, shall rest in the sound discretion of the trial court."

ship owned no real property and no "professional equipment or other personal property."

As the Oregon Supreme Court said in *McCallum v. Asbury,* 238 Ore. 257, 263, 393 P.2d 774 (1964),

> Partnership under agreements which restrict future competition appears to be a common avenue of professional advancement. . . . A young professional man may be willing to trade his future right to compete in a given community for an immediate and lucrative share in an established practice.

Relying on the agreements with his younger partners, Dr. Ashley invested substantial sums aggregating in excess of $140,000 in providing space and equipment for the benefit of the partnership. He also gave them access to his already existing patient following and provided "an immediate and lucrative share in an established practice." Certainly, it must be considered that this agreement was intended to protect Dr. Ashley and his substantial investment from exactly what has happened here—his four former partners opening their "Bothell Medical Clinic" within 300 feet of the "Doctor's Clinic."

Without reference to the history, background, or purpose of this partnership agreement and its restrictive covenant, the foursome place emphasis on the single word "partnership" in the restrictive agreement and argue that since Dr. Ashley is not, by himself, a "partnership," he cannot enforce the penalties the parties had freely and intelligently agreed upon for a breach of the restrictive covenant.

The Wyoming Supreme Court had no difficulty in a case involving a four-doctor-medical partnership, with three leaving the partnership, in holding that where the beneficiary of the penalty in the restrictive covenant was "the remaining partners," such a covenant was also for the benefit of the remaining partner. *Thickman v. Schunk,* 391 P.2d 939 (Wyo. 1964), and 410 P.2d 987 (Wyo. 1966).

■ Absent a specific clause to the contrary, whenever a "partnership" is referred to as the beneficiary of the penalty for violation of a restrictive covenant (intended to prevent competition by a partner or partners who leave

the partnership), it must mean the remaining member or members of the partnership. If it is construed to mean the partnership that existed before the violation of the restrictive covenant, we would have the paradox of those violating the covenant sharing in the penalty; and it would preclude protection of a remaining partner, such as Dr. Ashley, when his junior partners after receiving the benefits of his investment and his patient following, violate their agreement and seek to compete with him, thereby causing him to suffer considerable economic damage.

The trial court erred in granting a summary judgment against Dr. Ashley in his action on the restrictive covenant.

The trial court also erred in dismissing Dr. Ashley's conspiracy action with prejudice.

■ No affirmative relief had been asked by the defendants. It was not for the trial court, on its own motion, to interject an accounting action into the conspiracy action and then rely upon the accounting action in refusing to grant a voluntary nonsuit. Actually, there might be no accounting action, for if Dr. Ashley prevails in his action on the restrictive covenant, the defendants would forfeit all rights to accounts receivable and the partnership had no other property. In any event, the partnership accounting and the conspiracy action are unrelated and may be tried separately without prejudice to the defendants in the conspiracy action.

This matter is remanded to the Superior Court for King County with instructions to set aside the summary judgment in the action on the restrictive covenant; to set aside the order dismissing the conspiracy action with prejudice, and to grant a voluntary nonsuit without prejudice if the plaintiff still desires it.

HUNTER, C. J., HAMILTON and NEILL, JJ., and RUMMEL, J. Pro Tem., concur.

---

May 21, 1969. Petition for rehearing denied.