[No. 41724. En Banc. February 17, 1972.]

GRANT D. ASHLEY, *Appellant*, v. RICHARD V. LANCE *et al.*, *Respondents and Cross-appellants.*

*Benn R. Agor,* for appellant.

*Harry C. Wilson* and *Aiken, St. Louis & Siljeg,* by *Charles E. Siljeg,* for respondents and cross-appellants.

NEILL, J.—Plaintiff, the remaining member of what had been a 5-man medical partnership, brought this action against the four other partners, alleging that they acted in concert to breach the partnership agreement and engage in a competitive medical practice. Plaintiff asserts two claims —one in contract, alleging breach of a partnership agreement, the other in tort, alleging conspiracy.

In a prior appeal, we reversed a trial court's order granting summary judgment for defendants on the contract claim and dismissing the conspiracy claim. *Ashley v. Lance,* 75 Wn.2d 471, 451 P.2d 916 (1969). At the trial on remand, the conspiracy claim was submitted to a jury and the contract claim was submitted to the court. The court entered

findings of fact, conclusions of law and judgment in favor of defendants in the contract action. The jury returned a verdict for plaintiff in the conspiracy action. The trial court granted judgment notwithstanding the verdict and denied defendants' alternative motion for a new trial. Both parties appeal.

The facts giving rise to the controversy are detailed in the opinion in the prior appeal, *Ashley v. Lance, supra.* They will be reiterated here only insofar as necessary to identify the issues.

Plaintiff's claim in contract is for liquidated damages under paragraph 6.2 of the 1963 partnership agreement. That paragraph reads in part:

> If a partner withdraws voluntarily, it is agreed that he shall not conduct the practice of medicine and surgery within ten miles of the then City Limits of Bothell, King County, Washington, for a period of Ten (10) years from date of withdrawal. If this restriction be violated, the withdrawing partner shall forfeit all rights to accounts receivable and agrees to pay to the partnership as liquidated damages the sum of Ten Thousand ($10,000.00) Dollars.

By answer and by amended answer after remand of the earlier appeal, defendants assert this contract clause is unenforceable against them on grounds: (1) that the partnership had been dissolved under terms of the Uniform Partnership Act and the terms of the agreement prior to departure of the defendants; (2) alternatively, a dissolution under other provisions of the Uniform Partnership Act should be decreed nunc pro tunc to such prior time; (3) that the clause was never intended to apply to the simultaneous withdrawal of all but one partner; and (4) that the liquidated damages clause constitutes a penalty.

For purposes of this case we assume, without deciding, that these defenses were properly interposed by amended answer following the remand and that defendants' parol evidence on these contentions was properly received. The trial court accepted each of the defenses in rendering judgment against the plaintiff. We disagree.

February 9, 1966, defendants executed and delivered to plaintiff a written notice of intent to dissolve the partnership as of May 1, 1966. The notice expressly stated that defendants were not withdrawing, but were exercising the right to dissolve the partnership.

■ Assuming that the partnership was without a definite term, we nevertheless think the statutory provision (RCW 25.04.310(1)(b)) for dissolution without violation of the agreement by the express will of any partner when the partnership agreement contains no definite term is inapplicable under the present facts. The "express will" of the defendants set forth in their February notice was that the partnership be dissolved as of May 1, 1966. The activities alleged by plaintiff to constitute breach of contract occurred before that time. Notice of intent to dissolve at some definite future date does not relieve the notifying partner of his obligations to the partnership during the interim.

Defendants also argue that the February notice constituted a dissolution under paragraph 6.3 of the partnership agreement. That paragraph provides for "termination" (also referred to as "involuntary withdrawal") in case of bankruptcy, composition or compounding with creditors, or violation of the agreement itself on the part of one partner, to be effected by notice in writing from any other partner.[1]

---

[1] "6.3 *Bankruptcy, etc.* If any partner shall be adjudicated a bankrupt or insolvent, or shall take proceedings for liquidation by arrangement or composition, or compound with his creditors, or to do anything contrary to any of the stipulations or provisions herein contained, any other partner shall thereupon give notice in writing that the partnership shall forthwith determine as to him, then immediately upon such notice the bankrupt or insolvent partner shall cease to have any rights under these Articles except the right to an accounting for his share of undivided cash receipts held by the partnership on date of notice. In the event any partner be so terminated by a notice, not justified by a proceeding in bankruptcy or insolvency, or by some other breach of this agreement by the partner to whom the notice is directed, then such partner shall, upon his involuntary withdrawal from the firm, be entitled to his full share of undivided cash receipts held by the partnership on date of notice, and to seventy five per cent of his normal share of accounts receivable in existence as of the date his membership is terminated, and such share of accounts receivable shall be paid to him in twenty four months or less."

Neither the terms of the February notice nor the facts support the claim. It is uncontested that the defendants were the ones who left the existing partnership and went into business on their own. The argument that the February notice was really a termination of plaintiff under paragraph 6.3 is as illogical under the facts before us as would be a dismissed employee's claim that he had "fired the company." Further, the February notice does not purport to subject plaintiff to an "involuntary withdrawal," but only announces an intent to dissolve the partnership at a future date. In contravention of the statement in the February notice that they were not withdrawing, defendants did, in fact, voluntarily withdraw from the partnership before the date of dissolution specified in their February notice. Under these facts, it was error to conclude that a dissolution had been accomplished pursuant to RCW 25.04.310(1)(b).

■ Alternatively, defendants argued, and the trial court concluded, that a dissolution should be decreed under various subsections of RCW 25.04.320 (dissolution by decree of court) and that such decree of dissolution should be applied retroactively to prevent application of the partnership contract to defendants' activities. Again, assuming that a decree of dissolution would be appropriate under these circumstances and that equity can decree a dissolution nunc pro tunc, the facts of this case are that the partnership business continued until defendants' departure on April 25, 1966. The trial court found that the partnership ceased to function as an operating medical partnership on and after that date. But the actions of April 25, 1966, which had the effect of discontinuing the business, were taken by defendants, not by plaintiff. In essence, defendants' argument on this point is that a breach of contract which destroys the contract relationship prevents the party harmed from recovering contract damages. No authority is suggested for such a proposition. Equity and reason oppose, rather than support the contention. The trial court decreed a dissolution as of May 1, 1966. By that date the actions here asserted as being in breach of the partnership agree-

ment had already taken place. The trial court's conclusion that a nunc pro tunc decree of dissolution rendered the damages provisions of the partnership agreement inapplicable was erroneous.

We turn next to the applicability of the damages provisions of paragraph 6.2, quoted above. As has been stated, the defendants voluntarily withdrew prior to May 1, 1966. They immediately entered into a competitive practice of medicine and surgery within a few hundred feet of the partnership clinic.

Defendants contend that the restrictive covenant does not inure to plaintiff's benefit due to lack of a specific provision in the partnership agreement for one partner to be the sole beneficiary of the covenant or for a situation where more than one partner withdraws; and because the latter situation was not visualized by the parties at the time the agreement was executed.

In the prior appeal, *Ashley v. Lance,* 75 Wn.2d 471, 451 P.2d 916 (1969), we expressly stated at page 476:

> Absent a specific clause to the contrary, whenever a "partnership" is referred to as the beneficiary of the penalty for violation of a restrictive covenant (intended to prevent competition by a partner or partners who leave the partnership), it must mean the remaining member or members of the partnership.

It is clear that the covenant involved was intended to prevent the type of harm that occurred in this case (competition by a partner or partners who leave the partnership). It is also clear, and uncontested, that the restrictive covenant was deliberately prepared and freely entered into by all the parties. There is no finding, and the record contains no evidence, of either a specific clause or intent to the contrary. Thus the restrictive provision of the agreement inures to the benefit of plaintiff. *Ashley v. Lance, supra.*

Defendants' final argument against liability under the clause is that, even if the covenant is in force and by its terms applicable, it is invalid and cannot be imposed upon defendants because it constitutes a penalty rather than liq-

uidated damages. The trial court found that the harm or damage caused to the partnership by the withdrawal is very difficult of accurate estimation, and that the interest of one partner in the accounts receivable plus the sum of $10,000 was a reasonable forecast of just compensation for the damage occurring to the remaining partner or partners by a breach of the contract provisions. However, the court also concluded that the sum of $125,000, which would be the aggregate for a breach by four partners, would not have constituted a reasonable forecast of compensation in 1963 (when the contract was executed) for a breach of the magnitude which occurred in 1966. Plaintiff assigns error to the trial court's conclusion that the liquidated damages provision was unreasonable in the situation where four partners simultaneously breached the agreement. Thus framed, the question is not whether a penalty feature inheres in either the $10,000 stated sum or the forfeiture of accounts receivable. Rather, the question is whether the sum resulting under these factors, which are valid standing alone, becomes an unreasonable forecast when multiplied to take account of four partners breaching simultaneously.

We have looked with favor on liquidated damages clauses. *E.g.*, *Underwood v. Sterner*, 63 Wn.2d 360, 387 P.2d 366 (1963); *Management, Inc. v. Schassberger*, 39 Wn.2d 321, 235 P.2d 293 (1951). Such clauses will be upheld "[u]nless it be demonstrated that provisions for liquidated damages are actually a penalty or are under the circumstances otherwise unlawful . . .". *Jenson v. Richens*, 74 Wn.2d 41, 47, 442 P.2d 636 (1968). Here, there is no finding that the particular contract clause was intended as a penalty. Defendants do not suggest, and the record does not indicate, any basis for a factual conclusion that the precise amount in question would have been an unreasonable forecast in 1963 of the harm that might be occasioned by a breach such as occurred in this case. The only other facts found by the court indicate that the items of liquidated damages and forfeiture are not per se unreasonable. In

these circumstances, there is no basis for the conclusion that these provisions of the contract amount to a penalty.

Plaintiff is entitled to judgment in accordance with the liquidated damages provisions of the partnership agreement.

■■ Having determined that the defendants are liable to plaintiff under the provisions of the restrictive covenant in their partnership agreement, we turn to plaintiff's claim seeking additional damages for conspiracy. Absent special provision, damages recoverable by an injured party are limited to the amount necessary to compensate for the harm which has been suffered. Enhanced or multiple damages are not permissible. *Brink v. Griffith,* 65 Wn.2d 253, 396 P.2d 793 (1964). The question before us is whether, upon a comparison of the proceedings at bar, the tort action encompasses injuries independent of those compensated in the contract cause.

We have already determined that the restrictive covenant was directed against harms anticipated to result from competition in the same locality by a departing partner. The forfeiture and liquidated damages provisions are, in this agreement, made generally applicable to the entire scope of the harm contemplated in the restrictive covenant. These latter clauses constitute the agreed upon redress for the particular contract breach asserted here. This being so, the agreed upon and enforceable redress for the breach must be taken as full compensation for all reasonably foreseeable injuries occurring as a result of that breach. *Jenson v. Richens, supra; Pacific & Puget Sound Bottling Co. v. Clithero,* 162 Wash. 156, 298 P. 316 (1931). *See* 22 Am. Jur. 2d *Damages* § 235, p. 321 (1965).

Plaintiff seeks to avoid the limitation on his recovery as stated above by asserting a separate claim of conspiracy. The injuries claimed in the conspiracy action are: breach of the contract, competitive clinic in close proximity, drawing away some employees and patients of the old partnership, and interference with plaintiff's parking facilities by de-

fendants' use of their own property. Plaintiff emphatically argues that defendants' activities were done with a malicious purpose of maximizing the impact of their competition and driving plaintiff out of business. Conspiracy focuses upon the unlawfulness of the act or purpose to be achieved or the means undertaken, and is not ordinarily concerned with the motives of the action. *Accurate Prods., Inc. v. Snow,* 67 Wn.2d 416, 408 P.2d 1 (1965); *Harrington v. Richeson,* 40 Wn.2d 557, 245 P.2d 191 (1952). Plaintiff does not suggest how the alleged motives of defendants would compound their activities into unlawful acts beyond the scope of the harm envisioned by the parties when entering into the restrictive covenant.

As plaintiff observes, arguing in support of the liquidated damages clause, the harm which that clause is intended to compensate includes the factors making up the estimated impact on the partnership of a breach of the contract. We are of the view that the claimed tortious injuries in the conspiracy action constitute the same factors. Plaintiff's redress has already been achieved in the contract action, and allowance of this conspiracy action would impose double damages on the defendants. Therefore, we affirm the trial court's dismissal of the conspiracy claim without reaching the substantive merits and the trial court's disposition thereof. Any error in these latter respects would be harmless and not grounds for reversal. *See Capen v. Wester,* 58 Wn.2d 900, 365 P.2d 326 (1961); *W. L. Reid Co. v. M-B Contracting Co.,* 46 Wn.2d 784, 285 P.2d 121 (1955).

In light of the preceding dispositions of the claims asserted by plaintiff's complaint, we do not reach the parties' further contentions and arguments on appeal. The trial court is reversed as to the contract action, and is affirmed as to the conspiracy action. The case is remanded for entry of judgment in accordance herewith.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, STAFFORD, and WRIGHT, JJ., concur.

Petitions for rehearing denied March 29, 1972.