670

THE PORT OF PORT ANGELES, *Respondent,* v. CMC REAL
ESTATE CORPORATION, *Petitioner.*

*Graham & Dunn,* by *Frederick O. Frederickson;
Doherty, Doherty & Ritchie,* by *John H. Doherty,* for peti-
tioner.

*Platt, Irwin, Colley, Oliver & Wood,* by *Stephen E.
Oliver* and *Gary R. Colley,* for respondent.

DORE, J.—We affirm the trial court's denial of CMC Real
Estate Corporation's motion to set aside a default judgment
in favor of the Port of Port Angeles.

FACTS

On June 8, 1987, the Port of Port Angeles filed a complaint against CMC Real Estate Corporation (CMC) to quiet title to certain railroad right–of–way property located within industrial and terminal areas owned by the Port.[1] CMC was served through its registered agent on June 10, 1987.

Thirty days after service, the Port moved for and received an order of default because CMC failed to make an appearance or respond to the complaint. On July 30, 1987, 20 days after the entry of an order of default, CMC filed a notice of appearance through its counsel, John Doherty. CMC did not file any additional pleadings, nor did it move to vacate the default order.

After waiting 3 months for CMC to take some action on the case, the Port moved for a default judgment on November 6, 1987. Three days later, on November 9, 1987, CMC filed an answer to the Port's complaint and submitted affirmative defenses.

On November 13, 1987, a hearing was held on the Port's motion for default judgment. Attorney Christine Moore of Graham and Dunn appeared for CMC and filed a notice of appearance. She made an oral motion to set aside the default order and continue the hearing. The court denied CMC's motions and entered judgment for the Port. In its findings of fact and conclusions of law, the court found that the Port had elected to dismiss certain parcels of real property from its suit via a voluntary nonsuit pursuant to CR 41(a)(1), (2).

> 17. The PORT OF PORT ANGELES elected to take a voluntary dismissal of its suit pursuant to CR 41 as to the following parcels: 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 42, 43, 44, 45, 46, 50, 51, and 52.

---

[1] The subject property was utilized for railroad purposes by the Chicago, Milwaukee, St. Paul & Pacific Railroad Company (Chicago Railroad), a Wisconsin corporation. As a result of a bankruptcy proceeding involving Chicago Railroad, the trustee vested ownership of the subject property in CMC.

Clerk's Papers, at 225.[2] The record is unclear as to when the nonsuit occurred; however, the parties in their briefs treat this event as contemporaneous with the order of default judgment. Four days after judgment was entered, CMC through Doherty moved to vacate the default judgment pursuant to CR 60(b)(1). The sole basis alleged in support of setting aside the judgment was excusable neglect and a meritorious defense. Two days before the hearing set for December 17, 1987, CMC filed a legal memorandum which raised two additional issues as a basis for setting aside the default judgment: (1) The CR 41(a) voluntary nonsuit by the Port should be construed as a CR 15(a) amendment, thereby granting CMC additional time to answer; and (2) there was an appearance by Doherty before the order of default. The trial court again denied the motion.

CMC appealed the dismissal of the CR 60(b)(1) motion. After CMC filed its reply brief, the Port filed a motion on the merits to affirm. The Commissioner granted the Port's motion. Subsequently, the Court of Appeals affirmed the Commissioner's ruling. We accepted review.

### ANALYSIS

CMC contends that the trial court erred when it failed to rule the Port's partial nonsuit, made pursuant to CR 41(a),[3] had the effect of an amended pleading pursuant to

---

[2] At oral argument, counsel for the Port explained why they dismissed the listed parcels. Apparently, a review of legal descriptions of the listed parcels raised the question as to whether the legal descriptions of that portion of the right of way coincided with the location of the tracks. Consequently, they felt it would not be good faith pleading on their part to quiet title to those parcels.

[3] CR 41 states in part:
"(a) **Voluntary Dismissal.**
"(1) *Mandatory* . . . any action shall be dismissed by the court:
". . . .
"(B) By plaintiff before resting. Upon motion of the plaintiff at any time before plaintiff rests at the conclusion of his opening case.
"(2) *Permissive.* After plaintiff rests after his opening case, plaintiff may move for a voluntary dismissal without prejudice upon good cause shown and upon such terms and conditions as the court deems proper."

CR 15(a)[4] thereby giving CMC an additional 10 days to respond to the Port's pleading. The Port argued that the alleged error by the trial court raises a question of law which may only be raised by a direct appeal, not by a motion to set aside the judgment under CR 60(b)(1).

■ This court has long recognized the principle that an error of law will not support vacation of a judgment. *Burlingame v. Consolidated Mines & Smelting Co.*, 106 Wn.2d 328, 336, 722 P.2d 67 (1986); *In re Estate of LeRoux*, 55 Wn.2d 889, 890, 350 P.2d 1001 (1960). In *State ex rel. Green v. Superior Court*, 58 Wn.2d 162, 164, 165, 361 P.2d 643 (1961), the court stated:

> If . . . the court decided the issue wrongly, the error, if any, may be corrected by that court itself . . . or by this court on appeal, but the motion to vacate the judgment is not a substitute.

However, a judgment that is based on an "irregularity" in the proceeding is correctable through a CR 60(b)(1) motion.[5] CMC argues the default judgment, taken during the period in which CMC was entitled to answer the amended complaint, constitutes an irregularity because no default can be taken during the period in which a party is entitled to respond to the complaint. CMC relies on *Batchelor v. Palmer*, 129 Wash. 150, 224 P. 685 (1924), for the proposition that the trial court's ruling was not an error of law.

In *Batchelor*, the trial court entered an order of default and judgment for lack of an appearance. The last day on

---

[4]CR 15(a) states in part: ". . . [A] party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within . . . 10 days after service of the amended pleading . . .".

[5]CR 60(b) provides in relevant part:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

"(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;"

which the defendants could file an appearance, in *Batchelor*, fell on a Sunday, and the following day was a legal holiday. The court determined that Sundays and holidays should be excluded when computing the 20–day period within which defendants could file an appearance. The court held that the default order and judgment entered before the end of the day following the excluded Sunday and holiday was premature.

CMC's reliance on *Batchelor* is misplaced. If the trial court had ruled that the Port's voluntary dismissal of certain parcels was equivalent to a CR 15(a) amendment and then denied the motion to vacate, *Batchelor* might be some support for CMC's position. However, the trial court did not make such a ruling. Two distinct issues must be resolved before CMC can rely on *Batchelor*. *Batchelor* fails to discuss the question of whether or not a separate cause of action can be voluntarily dismissed pursuant to CR 41(a)(1), (2), rather than being eliminated through an amendment to the complaint. Nor does it discuss whether such an issue is an irregularity or a question of law.

■ The distinction between errors of law and irregularities is outlined in *In re Ellern*, 23 Wn.2d 219, 222, 160 P.2d 639 (1945).

> "An error of law is committed when the court, either upon motion of one of the parties or upon its own motion, makes some erroneous order or ruling on some question of law which is properly before it and within its jurisdiction to make."
> Examples of error of law are: erroneous rulings on motions and demurrers directed to pleadings; rulings on qualifications of a juror or the admissibility of evidence; and other matters of like character made in the course of an action.
>
> . . . .
> "An irregularity is defined to be the want of adherence to some prescribed rule or mode of proceeding; and it consists either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unseasonable time or improper manner."

*See also* Trautman, *Vacation and Correction of Judgments in Washington*, 35 Wash. L. Rev. 505, 513–15 (1960).

Pertinent here, this court stated early on that "[t]he irregularity contemplated by the statute is not an error which the court may make in construing statutes . . .". *Kuhn v. Mason,* 24 Wash. 94, 101, 64 P. 182 (1901).

The alleged error by the trial judge concerns the construction of two court rules, CR 41(a) and CR 15(a). The judge on a motion by the Port dismissed certain parcels of property from the pleadings pursuant to CR 41(a). The trial judge ruled that such a dismissal did not need to be effected by amending the complaint pursuant to CR 15(a). As illustrated above, the alleged error here is more akin to an error of law than an irregularity. Furthermore, while CR 41(a) provides for the voluntary dismissal of an action, it does not specifically refer to the voluntary dismissal of part of an action or specify that a partial nonsuit automatically amends the pleadings. Thus, it cannot be said that the judge failed to follow a prescribed rule of law. This conclusion is further reinforced by a review of the federal cases that have construed Fed. R. Civ. P. 41(a).

Whether a party may dismiss a *claim* pursuant to Fed. R. Civ. P. 41(a) is an unsettled question among the federal courts that have considered the issue. A number of federal courts have adopted the position that Fed. R. Civ. P. 41(a) does not apply to a motion to dismiss a claim; instead, dismissal of a single claim is properly treated as an amendment under Fed. R. Civ. P. 15(a). *Gronholz v. Sears, Roebuck & Co.,* 836 F.2d 515, 517–18 (Fed. Cir. 1987). However, other courts have not employed this distinction; instead, they have held that a claim may be dropped under either provision. 6 C. Wright & A. Miller, *Federal Practice* § 1479 (1971). This is explained in *Wilson v. Crouse–Hinds Co.,* 556 F.2d 870, 873 (8th Cir.), *cert. denied,* 434 U.S. 968 (1977).

> Although there exists some disagreement on whether a plaintiff must follow [federal rules of civil procedure] 15(a) or 41(a) when dismissing less than all of the claims involved in an action, this court in *Johnston v. Cartwright,* 355 F.2d 32, 39

(8th Cir. 1966), recognized that the differences were more technical than substantial: "[I]t may not be material whether the court acts under Rule 15(a) which relates to amendments . . . or Rule 41(a)(2)."

(Footnote omitted.) The only Washington authority that addresses the issue agrees that the differences are more technical than substantial. In *Orsi v. Aetna Ins. Co.*, 41 Wn. App. 233, 246 n.8, 703 P.2d 1053 (1985), the court in a footnote discusses whether CR 41(a) is the appropriate rule under which to drop a *claim*:

> Both rules 41(a)(1) and 41(a)(2) apply by their terms to dismissal of an *action*. The reference to an *action* in rule 41(a) contrasts with rule 41(b), which provides that "a defendant may move for dismissal of an action *or of any claim* against him." (Italics ours.) Thus, rule 41(b) is broader and more comprehensive than the parallel language in CR 41(a). 5 J. Moore, *Federal Practice* § 41.06 (1984 & Supp. 1985). . . .
>
> The federal rules and cases construing them make a clear distinction between a "claim" and an "action". Thus, when CR 41(a) refers to dismissal of an "action" there is no reason to suppose the term is intended to include the separate claims which may make up the action. When "dismissal of a claim" is intended, as in rule 41(b), that concept is spelled out clearly. Thus, an amendment under CR 15(a) is technically the proper procedure, rather than voluntary dismissal under CR 41(a).

While *Orsi* concluded an amendment under CR 15(a) is "technically" the proper procedure, it went on to allow the plaintiff's CR 41(a) voluntary dismissal of one Consumer Protection Act claim. No other Washington case addresses the issue before us.[6]

As the above discussion demonstrates, the alleged error of the trial court in construing CR 41(a)(1), (2) is based on sparse and unsettled authority in Washington and the federal system. Decisions based on sparse or ambiguous precedent are a type of error that falls outside the reach of a CR 60(b)(1) motion, and they should be left to the appellate process. Note, *Relief From Final Judgment Under Rule*

---

[6]While not addressing the propriety of a partial dismissal under CR 41(a), the following cases have allowed such a dismissal to stand. *Ashley v. Lance,* 75 Wn.2d 471, 451 P.2d 916 (1969); *Western Stud Welding, Inc. v. Omark Indus.,* 43 Wn. App. 293, 716 P.2d 959 (1986).

*60(b)(1) Due to Judicial Errors of Law*, 83 Mich. L. Rev. 1571, 1577–78 (1985). We conclude the trial judge's decision was not a failure to follow a prescribed rule, but, instead, was a ruling of law which can only be reviewed by a direct appeal.[7]

CMC failed to timely perfect its appeal on this issue, and the court properly dismissed CMC's motion to set aside a default judgment in favor of the Port of Port Angeles.

Affirmed.

CALLOW, C.J., and UTTER, DOLLIVER, DURHAM, SMITH, and GUY, JJ., concur.

BRACHTENBACH and ANDERSEN, JJ., concur in the result.

---

[7]CMC concedes as much in its reply brief: "The standard of review to be applied is whether the court erred, *as a matter of law*, . . . in ruling that the nonsuit of numerous real property parcels did not constitute an amendment to the complaint . . . not whether the court abused its discretion." Reply Brief of Appellant, at 2.