IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2018 DEC 24 AM 9: 16

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 77900-1-I |
| MELINDA RICHARDSON, | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MARK RICHARDSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED· December 24, 2018 |
| | ) | |

SMITH, J. — Mark Richardson appeals the trial court's November 2017 order vacating its June 2017 child support order. Because the court abused its discretion by vacating its June 2017 order, we reverse and remand to the trial court to reinstate that order. We also hold that because Mark's entitlement to a downward deviation is derived from the 50/50 residential schedule set forth in the parenting plan, a modification of the parenting plan is required before that deviation can be eliminated if a change in the residential schedule is the basis stated for eliminating the deviation.

## FACTS

### Original Child Support Order

The marriage of Mark and Melinda Richardson was dissolved in March 2012, following a trial before Judge Richard Eadie. At the time of dissolution, the

Richardsons had five children, four of whom were then minors, aged 8, 10, 12, and 17. In conjunction with the dissolution, the court entered a parenting plan and ordered that the three youngest children reside equally with each parent on a week-on, week-off basis beginning June 25, 2012. The court also ordered Mark to pay maintenance to Melinda in a monthly amount that would decrease incrementally each year, from $3,300 in the first year to $500 in the sixth

For purposes of child support, the trial court found that Mark's actual monthly net income was $8,657. The court found that Melinda's monthly net income was $8,340, including $3,500 per month of imputed income based on Melinda's history of employment and $3,300 based on Mark's first-year maintenance obligation. The court calculated Mark's presumptive amount of child support owed (the standard calculation) to be $1,440 per month. But the court granted a downward deviation to Mark that resulted in a zero-dollar transfer payment, finding "[t]he children spend a significant amount of time with the father" and "[t]he deviation does not result in insufficient funds in [Melinda's] household to meet the basic needs of the children." The court also stated in its written findings and conclusions entered in connection with the dissolution decree:

> Husband should be given a residential credit on child support once the 50/50 residential schedule is put in place and child support and the percentage allocation of direct costs deviated downwards so that there is no transfer payment and each parent pays 50% of direct expenses of children as listed in the Child Support Order.

Additionally, the trial court's order of child support dated March 28, 2012 (Original Child Support Order) orders each parent to contribute equally to the following expenses not included in the transfer payment (collectively Direct Expenses), with agreement not to be unreasonably withheld:

1) Prescription costs, and co pays not covered by insurance;
2) Agreed counseling and agreed therapy costs, and co pays not covered by insurance;
3) Agreed medical cost and agreed dental costs, and co pays not covered by insurance;
4) Agreed orthodontic cost;
5) Agreed educational expenses including agreed tutoring, agreed college counseling, agreed SAT Prep etc.
6) Agreed organized sports and agreed extracurricular activities, including agreed gear and agreed materials
7) Agreed cell phone and agreed cell phone plan.

The Original Child Support Order contemplates periodic adjustment as follows:

Per RCW 26.09.100, EXCEPT that the first adjustment may be initiated by either party as early as April 1, 2013 based on a full review of the wife's actual and/or imputed income. Parties shall exchange all information required by LFLR 10 by May 1 of each review year

Any adjustment shall include adjusting the ratios . . . for payment of [D]irect [E]xpenses.

*Melinda's 2014 Request To Adjust Child Support*

On April 22, 2014, Melinda moved for an adjustment of child support based on a change of income. She argued that due in part to the planned incremental decrease in Mark's maintenance obligation, Mark's income had increased and her income had decreased. Melinda's adjustment motion was heard before a commissioner, who found that Mark's actual monthly net income was then $8,903.39, that Melinda's actual monthly net income was $7,982.40, and that the standard calculation for child support owed by Mark was $1,623.60.

3

The commissioner adjusted the ratio for each parent's share of Direct Expenses so that Melinda would pay 47.3 percent and Mark would pay 52.7 percent. However, the commissioner declined to adjust the zero-dollar transfer payment, concluding that this "issue would be more appropriate for a Petition for Modification."

Melinda filed a motion for revision of the commissioner's ruling. This motion was heard before Judge Eadie on August 1, 2014. At the close of the hearing, Judge Eadie orally granted the revision by vacating the commissioner's ruling without prejudice to Melinda to bring a modification action. He invited the parties to submit a proposed order to that effect but also suggested to the parties: "You might even discuss—maybe you've got some way of resolving this."

The parties ultimately did resolve the issue via an agreed order, which the court entered in August 2014 (Agreed Order). The Agreed Order provided for a $500 transfer payment from Mark to Melinda and an allocation of Direct Expenses such that Melinda would pay 47 percent and Mark would pay 53 percent.

### Melinda's 2016 Request To Adjust Child Support

In August 2016, Melinda again moved to adjust child support on the basis of changed income. She again argued that due in part to the planned incremental reduction in Mark's maintenance obligation, Mark's income had increased and hers had decreased. Melinda also claimed that the parties' then 15-year-old daughter had been living with her full time since August 2015.

Mark opposed the motion. He also requested that the 53/47 allocation of

4

Direct Expenses under the Agreed Order be revised to an equal allocation and that the $500 transfer payment under the Agreed Order be reduced to zero.

On September 22, 2016, a commissioner pro tem entered a new child support order (September 2016 Order) that eliminated the downward deviation and ordered Mark to make a transfer payment equal to the standard calculation of $2,270. In the September 2016 Order, the commissioner pro tem indicated that she had denied Mark's request for a downward deviation because Mark had a new spouse or domestic partner with an "unknown" income, the parties' 15-year-old daughter was living with Melinda 100 percent of the time, and the "father has a high income and does not have a need for a support reduction and a reduction of support would leave insufficient income in the mother's household." The commissioner pro tem also ordered that Mark pay a 67-percent share of Direct Expenses and that Melinda pay a 33-percent share.[1] The September 2016 Order was based on child support worksheets reflecting that Melinda's monthly net income was $6,105, and that Mark's monthly net income was $12,290 (September 2016 Worksheets).

Mark moved for revision of the September 2016 Order, arguing, among other things, that "[t]he Commissioner erred in failing to grant a residential credit to Respondent Father for a 50/50 schedule when the downward deviation is the law of the case." On November 2, 2016, the trial court granted Mark's revision motion, vacated the September 2016 Order, and reinstated the Agreed Order

---

[1] Another part of the same order provides that the allocation is 34/66, rather than 33/67.

"without prejudice for either party to file a modification of support."

*Melinda's Petition To Modify*

On November 28, 2016, Melinda filed a petition to modify the Agreed Order that had been reinstated by the trial court on November 2. She argued that the monthly child support amount should be changed because the Agreed Order "causes severe financial hardship" for her and because two or more years had passed since the Agreed Order was signed and the parents' income had changed. Melinda's petition also included a request that the court revise the Agreed Order's allocation for postsecondary support, authorize the liquidation of bonds held for use in paying postsecondary costs, and provide an arbitration requirement for resolution of disputes related to postsecondary costs

A hearing on Melinda's petition was held before Judge Elizabeth Berns on March 17, 2017. At the hearing, Judge Berns found that with respect to the parties' income, there had not been a substantial change in circumstances that was not known or contemplated at the time of dissolution. Judge Berns acknowledged that she could adjust child support without finding that there had been a substantial change in circumstances but found that Melinda had not satisfied the burden for an adjustment. Judge Berns also indicated that there was no basis for any change to the transfer payment based on where the children were actually spending their time because there had been no change to the parenting plan and the Original Child Support Order contemplated that Mark would receive a downward deviation based on the 50/50 residential schedule.

On June 9, 2017, Judge Berns entered a final order and findings on

petition to modify child support order (Order on Petition) incorporating her oral findings from the March hearing. Judge Berns also entered a modified order of child support (June 2017 Order). The June 2017 Order modified the Agreed Order's provisions related to postsecondary support and reinstated a zero-dollar transfer payment by granting a downward deviation from the standard calculation of $1,658.62. Judge Berns' reasons for granting the downward deviation were stated as follows:

1) The final parenting plan entered in this case provides for 50/50 residential time. Father receives a residential credit based on the parenting plan The mother has costs she has had to cover because she's had some children more than 50% of the time for other reasons, but not because of the parenting plan

2) Father makes payments on other expenses for the children separate and apart from what's set forth in this child support order, and the mother has as well.

3) The monthly child support amount should not be changed from the court's order at trial as there has not been a substantial change in circumstances in the parties' incomes that was not known or contemplated at the time of trial. The worksheets from 2014 are being used for this order.

4) The deviation does not result in insufficient funds in [Melinda's] household to meet the basic needs of the children. The children do not receive public assistance.

*Melinda's Appeal and CR 60(b) Motion for Relief*

On July 7, 2017, Melinda filed a notice of appeal of the June 2017 Order and the Order on Petition. That appeal was later dismissed after Melinda failed to timely perfect the record. In the meantime, Melinda moved the trial court under CR 60(b) for relief from the June 2017 Order. She argued that there had been an "irregularity" within the meaning of CR 60(b)(1) because the court's order was inconsistent with Judge Eadie's intent when he entered the Original Child Support Order. Melinda also argued that there was "newly discovered

7

evidence" within the meaning of CR 60(b)(3) related to drug and alcohol abuse by the parties' then 18-year-old son, W.R.

The trial court granted Melinda's CR 60(b) motion, reasoning, among other things, that "[t]here has been irregularity in the Court proceedings because the Court has not followed Judge Eadie's intent regarding adjustment of a zero transfer payment, 50-50 parenting plan." On November 8, 2017, the court entered a final order and findings on petitioner's CR 60(b) motion and a modified order of child support (Final Child Support Order). These orders adopted the September 2016 Worksheets, allocated 33 percent of Direct Expenses to Melinda and 67 percent of Direct Expenses to Mark, ordered Mark to pay a transfer payment equal to the standard calculation of $2,270, and made the transfer payment effective as of January 1, 2017 The court also ordered Mark to pay back support calculated from January 1, 2017. The court later amended and clarified the Final Child Support Order on Mark's subsequent motions, but the substance of that order remained unchanged

Mark appeals

## DISCUSSION

### Melinda's CR 60(b) Motion

Mark argues that the trial court erred by granting relief to Melinda under CR 60(b). We agree.

CR 60(b) provides in relevant part·

On motion and upon such terms as are just, the court may relieve a party . . . from a final . . . order . . . for the following reasons·

(1) Mistakes, inadvertence, surprise, excusable neglect or

8

irregularity in obtaining a judgment or order;

. . . .

(3) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b)

The standard of review for a decision granting a motion to vacate under CR 60(b) is abuse of discretion. Luckett v. Boeing Co , 98 Wn. App. 307, 309, 989 P.2d 1144 (1999). The trial court abuses its discretion when its decision is based on untenable grounds or reasoning. Luckett, 98 Wn. App. at 309-10 An abuse of discretion also occurs when the trial court applies the wrong legal standard or bases its ruling on an erroneous view of the law. State v. Cawyer, 182 Wn. App. 610, 616, 330 P.3d 219 (2014); see also In re Marriage of Shortway, 4 Wn. App. 2d 409, 418, 423 P.3d 270 (2018).

a  CR 60(b)(1) Analysis

Mark first argues that the trial court erred by vacating its June 2017 Order under CR 60(b)(1) because the court's purported misunderstanding of Judge Eadie's intent in 2012 did not constitute a mistake, inadvertence, surprise, excusable neglect, or irregularity. We agree.

It is a "long recognized" principle that an error of law will not support vacating a judgment under CR 60(b). Port of Port Angeles v. CMC Real Estate Corp , 114 Wn.2d 670, 673, 790 P.2d 145 (1990). Errors of law must, instead, be corrected by appeal. In re Marriage of Tang, 57 Wn. App. 648, 654, 789 P 2d 118 (1990).

The interpretation of a child support order (here, the Original Child Support Order) is a question of law. In re Marriage of Sagner, 159 Wn. App. 741, 749,

247 P.3d 444 (2011) Moreover, whether the parties may adjust child support, and under what circumstances, is also a question of law—and, specifically, a question of application and interpretation of the statutory scheme for child support adjustments and modifications. See Sagner, 159 Wn. App. at 749 (language used in child support order, the interpretation of which is a question of law, is presumed to incorporate existing relevant statutory provisions); cf. RCW 26.09.100 (limiting the extent to which child support orders may vary from the statutory provisions governing periodic adjustments and modifications). Indeed, even Judge Eadie recognized this issue as a question of law during the hearings that took place in March 2012 and August 2014, acknowledging on both occasions that whether the parties may adjust child support without a modification is an issue of statutory interpretation

Here, following a hearing in March 2017, the trial court initially concluded that a zero-dollar transfer payment was warranted because Judge Eadie's intent in 2012 was that Mark would be entitled to a residential credit under the parenting plan, which had not been modified. The court also concluded that there had not been a substantial change in circumstances in the parties' income that was not contemplated at the time of trial. Then, on Melinda's CR 60(b) motion, the court changed course, concluding instead that even though the parenting plan had not been modified, the court could take into consideration the fact that two of the three youngest children were living exclusively with Melinda. The court also revised its conclusion regarding the parties' income, ultimately stating that the "father's income from all sources significantly exceeds the

10

mother's." The court concluded that relief was warranted under CR 60(b) because it had originally misconstrued Judge Eadie's intent, and that his intent in 2012 (when he entered the Original Child Support Order) was that the parties "could adjust child support, based on income, of an initial zero payment, 50-50 parenting plan."

In short, the trial court used CR 60(b) to reconsider its interpretation of the Original Child Support Order and to review and revise its order with respect to issues that had already been briefed, argued, and decided This was an abuse of discretion because as discussed above, a perceived misinterpretation of the Original Child Support Order was an error of law to be corrected on appeal and not under CR 60(b), the purpose of which is not for the court to reverse itself on issues that the parties have previously briefed and argued State v. Keller, 32 Wn. App. 135, 141, 647 P.2d 35 (1982).

b. CR 60(b)(3) Analysis

Mark argues next that the trial court erred by vacating the June 2017 Order under CR 60(b)(3) because evolving circumstances related to the parties' son, W.R., were not "newly discovered evidence." Again, we agree.

"Newly discovered evidence" within the meaning of CR 60(b)(3) must be evidence that could not have been discovered by due diligence in time to move for a new trial under CR 59(b). CR 60(b)(3). Here, the last day to move for a new trial was June 19, 2017.[2] Nonetheless, it is apparent that in vacating the

---

[2] CR 59(b) provides: "A motion for a new trial or for reconsideration shall be filed not later than 10 days after the entry of the judgment, order, or other decision." The June 2017 Order was entered on June 9, 2017.

11

June 2017 Order, the trial court relied on evidence that was known or could have been discovered by due diligence before June 19, 2017.

Specifically, the trial court wrote that a "significant factor" in its decision to vacate the June 2017 order was newly discovered evidence provided in Melinda's CR 60(b) motion. In that motion, Melinda alleged that W.R. began living with her full time in December 2016, that W.R turned 18 in May 2017 but did not graduate from high school, and that she incurred substantial expenses to assist W.R. with legal problems resulting from W R.'s drug and alcohol abuse. But both Melinda and the court were aware as early as March 10, 2017, that W.R. was living with Melinda full time, that W.R. had stopped attending classes, and that W.R. was involved with substance abuse—including narcotics.[3] Accordingly, this information was not "newly discovered evidence "

In her response brief, Melinda argues that the parties and the court were not "fully aware of the extent of [W.R.'s] struggles." She then argues without citation to any authority that W.R.'s "unfolding situation" constituted newly discovered evidence, listing events that occurred since the entry of the June 2017 Order. But "CR 60 relief will not be granted when the new evidence is *a change in the facts that had not yet occurred at the time judgment was entered.*" Tamosaitis v. Bechtel Nat'l, Inc., 182 Wn. App. 241, 255, 327 P.3d 1309 (2014) (emphasis added). For example, in In re Marriage of Knutson, 114 Wn App. 866, 60 P.3d 681 (2003), the trial court vacated an earlier dissolution decree and revised the distribution of certain investment plans. Knutson, 114 Wn. App. at

---

[3] Melinda filed a declaration on March 10, 2017, setting forth these facts.

870. The court did so based on the husband's argument that one of the plans had lost significant value since the decree was entered. Knutson, 114 Wn. App. at 868. When the wife appealed, the Court of Appeals reversed, observing that "the transitory nature of . . . 'evidence' does not lend itself to application of CR 60(b)(3)." Knutson, 114 Wn. App. at 872. The court also observed that if it were to accept the husband's argument that a change in the plan's value was newly discovered evidence, "'newly discovered evidence' would occur with *every change* in the plan's value, or any other asset previously valued " Knutson, 114 Wn. App. at 872 (emphasis added). Here, as in Knutson, the fact that W.R.'s situation changed—by worsening over time—does not justify relief under CR 60(b)(3), particularly where the underlying circumstances were well known both to Melinda and to the trial court prior to entry of the June 2017 Order. Cf Tamosaitis, 182 Wn App. at 255 ("[N]ewly occurring evidence is not the same as newly discovered evidence for purposes of CR 60 ").

c. *CR 60(b)(11) Analysis*

Melinda argues for the first time on appeal that even if W.R.'s "unfolding situation" does not justify relief under CR 60(b)(3), CR 60(b)(11) serves as an alternate ground for affirming the trial court's decision to vacate the June 2017 Order. We disagree.

CR 60(b)(11) permits the vacation of a judgment due to "[a]ny other reason justifying relief from the operation of the judgment." "The use of CR 60(b)(11) 'should be confined to situations involving extraordinary circumstances not covered by any other section of [CR 60(b)].'" In re Marriage of Yearout, 41

13

Wn. App. 897, 902, 707 P.2d 1367 (1985) (quoting Keller, 32 Wn. App. at 140). "Such circumstances must relate to irregularities extraneous to the action of the court or questions concerning the regularity of the court's proceedings." Yearout, 41 Wn. App. at 902. Because broad use of CR 60 (b)(11) could provide "a springboard for attacks on . . . final judgments[,]" courts have stressed that CR 60(b)(11) is limited in nature and will not be applied absent unusual circumstances. See In re Marriage of Flannagan, 42 Wn. App. 214, 222, 709 P.2d 1247 (1985); Yearout, 41 Wn. App. at 902.

Here, Melinda does not allege any extraordinary or unusual circumstances—nor does she allege any irregularity. Rather, the thrust of her argument is that she is entitled to child support because W.R.'s situation continues to worsen. In other words, Melinda alleges that relief is warranted because the facts have changed since the trial court entered its June 2017 Order. But we have previously held that "CR 60(b)(11) is not applicable to cases . . . in which facts are alleged to have changed after entry of judgment." State v Dorosky, 28 Wn. App. 128, 132, 622 P.2d 402, review granted and dismissed, 96 Wn 2d 1011 (1981) Therefore, Melinda's argument is unpersuasive.

*Changes to Downward Deviation*

Because we hold that the trial court erred by vacating its June 2017 Order, we need not reach Mark's arguments regarding the substance of the Final Child Support Order. But because Mark's argument that a modification is required to eliminate the Original Child Support Order's downward deviation almost certainly will arise again in this case, we take this opportunity to address it. Cf. In re

14

Marriage of Trichak, 72 Wn App. 21, 24, 863 P.2d 585 (1993) (addressing issue that was not necessary for disposition of case but was likely to arise again in the future).

Mark argues that because the Original Child Support Order contemplates that the standard calculation would be deviated downward to zero based on the children's 50/50 residential schedule, that deviation is the law of the case. Mark argues further that because the deviation to zero is the law of the case, a modification, together with a showing of a substantial change in circumstances, is required to eliminate it or to impose any nonzero transfer payment on him. He mainly relies on Trichak in support of his argument In Trichak, the court granted the father a pro rata deviation based on Social Security disability income received by the parties' daughter. Trichak, 72 Wn App at 22. Neither party appealed the decree, but two years later, the mother petitioned to modify child support. Trichak, 72 Wn. App at 22. The trial court increased the father's support obligation based on a substantial change in circumstances in the income of the parties but continued to allow the pro rata deviation as the law of the case. Trichak, 72 Wn. App. at 22

On appeal, we observed that the mother "does not contend that the court failed to reconsider the deviation provision in light of [the daughter's] needs Rather, she simply contends that the offset for [the daughter's] Social Security income is not a *proper* deviation under the child support statute " Trichak, 72 Wn. App. at 24 (emphasis added). Because the mother never appealed the *propriety* of the deviation below, the trial court correctly concluded that the

propriety of the deviation was the law of the case   Trichak, 72 Wn  App. at 24.

Here, Mark's entitlement to a downward deviation is derived from the 50/50 residential schedule.  We agree that Mark's entitlement to this deviation is, like the propriety of the offset in Trichak, the law of the case.  Furthermore, RCW 26.10.075(1)(d) provides that the residential schedule may serve as a basis for a deviation, and RCW 26.09.185(6) explains that the residential schedule is set forth in the parenting plan.  In other words, Mark's entitlement to a deviation flows from the parenting plan, which is the source of the residential schedule.  Accordingly, the parenting plan must be modified before the deviation can be eliminated if the reason for eliminating the deviation is a change in the residential schedule for the children still subject to the parenting plan.  See In re Marriage of Coy, 160 Wn. App. 797, 248 P 3d 1101 (2011) (Any increases or reductions to the rights of a party under a parenting plan, no matter how slight, require a modification to the parenting plan so that the trial court may, as required by RCW 26.09.260, consider the best interests of the child.).

Melinda argues that a modification of the parenting plan is not required to eliminate the downward deviation because it is undisputed that two of the children are living with Melinda full time.  She argues that this fact either (a) constitutes a substantial change in circumstances sufficient to justify modifying child support or (b) results in insufficient funds in Melinda's household, making a deviation statutorily impermissible.  These arguments are unpersuasive.  As explained above, the deviation awarded to Mark flows from the parenting plan, and because that award was not challenged at the time it was entered, it is the

16

law of the case. See Trichak, 72 Wn. App. at 23 (Where propriety of deviation is unchallenged, it is the law of the case and parties are precluded from relitigating it.). Melinda's attempt to decouple that deviation award from the parenting plan is inconsistent with RCW 26 09 260, which requires that the parenting plan be modified to change the children's residential schedule. Cf. In re Marriage of Mattson, 95 Wn. App. 592, 601 n.6, 976 P.2d 157 (1999) (rejecting father's argument that he should not be required to contribute to summer camp expenses because he could supervise the children while former wife was at work and observing that this argument was inconsistent with RCW 26.09.260). In short, where the trial court has determined that it is in the best interests of the children to reside equally with each parent, Melinda may not circumvent that determination by urging the court to eliminate the deviation based on the parties' actions in contravention of that determination. To the extent that Melinda argues those actions were justified, the proper forum for that argument is a parenting plan modification proceeding, not a child support modification proceeding

We hold that where a downward deviation has been granted based on the residential schedule included in the parenting plan, a trial court may not eliminate that deviation based on where the children subject to the residential schedule are actually spending their time, without modifying the parenting plan. We do not reach the issue of whether the trial court may, absent a modification to the parenting plan, change the *amount* of the deviation (without eliminating it) and order a nonzero transfer payment on a motion to modify or adjust child support

17

*Melinda's Request for Fees on Appeal*

Melinda requests fees on appeal. Under RAP 18.1, this court may award attorney fees if authorized by applicable law. RCW 26.09.140 provides for attorney fees on appeal in dissolution proceedings. In deciding whether to award attorney fees on appeal, we consider "the arguable merit of the issues on appeal and the parties' financial resources." In re Marriage of Raskob, 183 Wn App. 503, 520, 334 P.3d 30 (2014) Having considered Melinda's timely filed financial affidavit and Mark's answer thereto, and because the issues raised by Mark on appeal have considerable merit, we decline to award Melinda attorney fees on appeal.

We reverse and remand to the trial court to reinstate the June 2017 Order

WE CONCUR.

18